**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold W. SAIN, Defendant-Appellant.**

**Nos. 85–2489, 85–2490.**

United States Court of Appeals,
Tenth Circuit.

June 24, 1986.

Steven M. Angel of Hughes & Nelson, Oklahoma City, Okl., for defendant-appellant.

Robert E. Mydans, Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on brief), Oklahoma City, Okl., for plaintiff-appellee.

Before BARRETT, McKAY and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

After a bench trial, defendant Harold Sain was convicted under the Assimilative Crimes Act, 18 U.S.C. § 13, of driving while impaired in violation of Okla.Stat. tit. 47, § 761 (1981), and of transporting a nonintoxicating beverage in an opened container in violation of Okla.Stat. tit. 21, § 1220 (1981), 618 F.Supp. 270. He appealed, contending that reversal of his convictions is required because the government failed to prove essential elements of each of the offenses. In addition, he argues that if his conviction for driving while impaired is not reversed, the case should be remanded for a jury trial, because his right to a trial by jury was erroneously denied by the district court. We conclude that there is no right under the Assimilative Crimes Act to a jury trial for the charge of driving while impaired, a petty offense under federal law, and that the government's evidence was sufficient to prove all elements of the offense. We therefore affirm defendant's conviction for driving while impaired. Because we conclude the government failed to prove all elements of the offense of transporting a nonintoxicating beverage in an

opened container, we reverse defendant's conviction on that charge.

The case arose out of the events of the night of March 28, 1985, when the defendant and a friend, Captain Randy Irwin, returned to Tinker Air Force Base, Oklahoma, from the Skytrain Night Club. Captain Irwin testified that during the evening he and defendant consumed one beer each before leaving the base for the night club, one beer each in defendant's car while parked outside the club before they entered the club, and two or three beers each while at the club. Upon reaching the gate to Tinker Air Force Base, defendant's car was stopped for an identification check. After detecting the odor of beer, observing two open bottles labeled "Miller High Life" containing a yellow liquid in the console between the driver's and passenger's seats, and observing that defendant experienced difficulty in producing his identification and in exiting his vehicle, Airman Noel Ward conducted field sobriety tests. Ward and his supervisor, Sergeant Randall Menning, who observed the field tests, determined defendant was impaired and should not be driving. Defendant was then taken to the Del City police department where a breathalyzer test was performed. The test indicated that defendant's blood alcohol was between 0.07% and 0.08%.

## I.

Defendant contends the district court improperly denied him a jury trial for the charge of driving while impaired. Under Okla.Stat. tit. 47, § 761 (1981), conviction of a first offense of driving while impaired carries a fine of not less than $100 nor more than $300. Article 2, § 19, of the Oklahoma constitution provides a right to jury trial in all criminal cases unless the offense carries a fine of less than $100. Defendant argues that the scope of the Assimilative Crimes Act includes the entire criminal law of the surrounding jurisdiction, including the right to a jury trial. Because he would have been entitled to a jury trial in the courts of Oklahoma on the charge of driving while impaired, he contends that it was error to deny his request for jury trial.

The district court determined the Assimilative Crimes Act adopts state law to define the elements of the offense and to establish the appropriate range of punishment, but that no further adherence to state law was required. After noting the penalty for driving while impaired as prescribed by Okla.Stat. tit. 47, § 761 (1981), comes within the definition of a petty offense under federal law, 18 U.S.C. § 1(3), the district court concluded there was no right to jury trial for that offense.

The precise question whether the Assimilative Crimes Act adopts state law with respect to the right to jury trial is one of first impression. After consideration of the scope of the Act as defined by the federal courts, we conclude the district court correctly determined that adherence to state law regarding the right to jury trial is not required.

■ The purpose of the Assimilative Crimes Act is to provide a method of punishing a crime committed on government reservations in the way and to the extent that it would have been punishable if committed within the surrounding jurisdiction. *United States v. Dunn*, 545 F.2d 1281, 1282 (10th Cir.1976). The Act fills in gaps in federal criminal law by providing a set of criminal laws for federal enclaves. *United States v. Mayberry*, 774 F.2d 1018, 1020 (10th Cir.1985), *quoting United States v. Prejean*, 494 F.2d 495, 496 (5th Cir.1974). The reason for adopting local laws is not that Congress passed on their merits after examining each individually, but that as a practical matter, Congress had to proceed on a wholesale basis to establish criminal laws for federal enclaves. *United States v. Sharpnack*, 355 U.S. 286, 293, 78 S.Ct. 291, 295, 2 L.Ed.2d 282 (1958).

■ We have held that federal courts are not required to follow specific provisions of state law which go beyond establishing the elements of an offense and the range of punishment. *United States v.*

*Pinto,* 755 F.2d 150, 154 (10th Cir.1985) (federal court not required to follow state law prescribing parole terms when sentencing a defendant convicted under the Assimilative Crimes Act). Furthermore, state law which is inconsistent with federal policies expressed in federal statutes is not assimilated by the Act. *Cheyenne-Arapaho Tribes of Oklahoma v. State of Oklahoma,* 618 F.2d 665, 668 (10th Cir.1980).

■ A federal statute, 18 U.S.C. § 1(3), defines a petty offense as "[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both." The Supreme Court has held that there is no right to a trial by jury under the Constitution for petty offenses. *Codispoti v. Pennsylvania,* 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974); *District of Columbia v. Clawans,* 300 U.S. 617, 624, 57 S.Ct. 660, 661, 81 L.Ed. 843 (1937). The Oklahoma provision affording jury trials for the petty offense of driving while impaired conflicts with federal statutory and case law. Therefore, we hold that the Assimilative Crimes Act does not adopt Oklahoma law with respect to the right to trial by jury.

## II.

Defendant contends the district court erred in denying his motion for a directed verdict on the charge of driving while impaired in violation of Okla.Stat. tit. 47, § 761 (1981). He argues the government failed to prove that his ability to drive was actually impaired as required by Okla.Stat. tit. 47, § 756(b) (1984 Supp.)[1]. None of the government's witnesses observed the defendant operating the car and, therefore, could not testify that his driving was actually impaired.

■ The district court correctly concluded that § 756(b) does not require direct observation by the arresting officer or other eyewitness that the defendant's driving was actually impaired.[2] The statute merely requires *some* evidence, in addition to a blood alcohol content in the applicable range, that the defendant operated a motor vehicle while his physical or mental abilities were affected by alcohol to the extent that the public health and safety were threatened. Section 756(b) does not specify that observation of the defendant's driving or any particular evidence is required to sustain a conviction.

■ Under the Assimilative Crimes Act, federal courts are not bound by the interpretations of assimilated statutes provided by the courts of the surrounding jurisdiction because the prosecution is for enforcement of federal law, rather than state law. *United States v. Brown,* 608 F.2d 551, 553 (5th Cir.1979). However, Oklahoma case law supports our interpretation of the statute. In *Perry v. State,* 561 P.2d 112 (Okla. Crim.App.1977), the court determined that a blood alcohol content of 0.06%, coupled with the testimony of the arresting officer that the defendant appeared intoxicated at

---

1. Okla.Stat. tit. 47, § 756 (1984 Supp.), Admission of evidence shown by tests, reads in pertinent part:

    (b) evidence that there was, at the time of the test, an alcohol concentration in excess of five-hundredths (0.05) but less than ten-hundredths (0.10) is relevant evidence that the person's ability to operate a motor vehicle was impaired by alcohol. However, no person shall be convicted of the offense of operating or being in actual physical control of a motor vehicle while such person's ability to operate such vehicle was impaired by alcohol solely because there was, at the time of the test, an alcohol concentration in excess of five-hundredths (0.05) but less than ten-hundredths (0.10) in the blood or breath of the person in the absence of additional evidence that such person's ability to operate such vehicle was affected by alcohol to the extent that the public health and safety was threatened or that said person had violated a state statute or local ordinance in the operation of a motor vehicle.

2. Defendant points out that Airman Ward did not have an opportunity to observe defendant's operation of his vehicle because he was stopped at the gate to Tinker Air Force Base. Despite the fact that defendant was stopped and taken into custody at the entrance to the federal enclave, he does not complain of a lack of federal jurisdiction, but rather bases his argument on the government's failure to prove an element of the assimilated offense.

the time of his arrest, was sufficient to support a conviction for the offense of driving while impaired.

■ Here, the district court found that while the evidence was in conflict, the more credible evidence established that defendant's reaction time, coordination, and balance were impaired by alcohol. Both Airman Ward and Sergeant Menning testified that defendant failed the field sobriety tests, which included touching a finger to the nose with eyes closed, heel-to-toe walking, and turning around in a circular fashion. Both witnesses had received prior training in the detection of alcohol impairment or intoxication. Sergeant Menning, who had 12 years' experience as a security policeman and had participated in 50 to 100 arrests for drunk driving, testified that defendant was glassy-eyed and flushed and that he exhibited slurring of his speech. On appeal, defendant has not established that the district court's finding of impairment based on the evidence presented was clearly erroneous. Therefore, we affirm the district court's denial of defendant's motion for a directed verdict.

### III.

■ Defendant argues that his conviction for transporting a nonintoxicating beverage in an opened container in violation of Okla.Stat. tit. 21, § 1220 (1981), should be reversed because the government failed to prove that the liquid in the container found in his car contained more than ½ of 1% alcohol by volume and not more than 3.2% alcohol by weight as required by the statute.[3] The district court denied defendant's motion for acquittal on the charge, finding that while the government failed to test the alcohol content of the liquid in the open bottles taken from the passenger compartment of defendant's car, circumstantial evidence was sufficient to support the conclusion that the bottles contained beer. The court found the evidence established that the bottles bore the label of a name brand of beer, that they were one-quarter to one-half full of a pale yellow liquid that smelled of alcohol, and that the bottles were cold. The district court also noted that the government was prevented from testing the contents of the bottles because defendant's passenger, Captain Irwin, poured the liquid into a paper sack after Airman Ward requested that the bottles be handed to him.

We agree with the defendant that the government failed to prove an essential element of the offense prescribed by Okla. Stat. tit 21, § 1220 (1981). The statute includes both a lower *and* an upper limit for the alcohol content of beverages, the transportation of which is proscribed. While the circumstantial evidence may have been sufficient to establish that the liquid in the bottles contained some alcohol, there was no evidence in the record to support a finding that the alcohol content did not exceed the statutory upper limit of 3.2%. Therefore, the government's evidence did not establish that defendant violated the statute charged in transporting the liquid contained in the bottles taken from his vehicle. Accordingly, we reverse defendant's conviction for violation of Okla. Stat. tit. 21, § 1220 (1981).

Affirmed in part and reversed in part.

---

3. Okla.Stat. tit. 21, § 1220 (1981), provides in pertinent part:

It shall be unlawful for any person to knowingly transport in any moving vehicle upon a public highway, street or alley any nonintoxicating beverage containing more than one-half of one percent (½ of 1%) alcohol by volume and not more than three and two-tenths percent (3.2%) alcohol by weight except in the original container which shall not have been opened and from which the original cap or seal shall not have been removed, unless the opened container be in the rear trunk or rear compartment, which shall include ... any outside compartment which is not accessible to the driver or any other person in the vehicle while it is in motion.