**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Patricia ROBERTS, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alfred L. HOSKINS, Defendant–Appellant.**

**Nos. 87–5162, 87–5163.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 4, 1988.

Decided April 27, 1988.

Seymour I. Cohen, Torrance, Cal., for defendants-appellants.

Jeffrey C. Eglash, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, TANG and NORRIS, Circuit Judges.

TANG, Circuit Judge:

Patricia Roberts and Alfred Hoskins appeal convictions for driving a vehicle with a blood alcohol content above .10 percent, in violation of California law. Hoskins also appeals his conviction for driving under the influence of alcohol.[1] Each was arrested while driving on the Long Beach Naval Station in Long Beach, California. The prosecutions were under the Assimilative

---

**1.** Both defendants were convicted under Cal. Veh.Code § 23152, which provides in pertinent part:

§ 23152. **Influence of alcohol or drugs; alcoholic content in blood** ...

(a) It is unlawful for any person who is under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle.

(b) It is unlawful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.

\* \* \* \* \*

Crimes Act, 18 U.S.C. § 13 (1982).[2]

We must decide whether California's implied consent law provisions, Cal.Veh.Code §§ 23157 (West 1985) and 23157.5 (Supp. 1985),[3] are assimilated pursuant to the Assimilative Crimes Act in a federal prosecution for driving while intoxicated on a federal enclave in the state of California. We conclude that they are not and affirm.

## BACKGROUND

Roberts was stopped on September 14, 1985, while driving into the Long Beach Naval Station. A guard noticed an open beer can on the front seat of her car and arrested her on suspicion of drunk driving. Roberts admitted consuming three drinks. She refused to submit to a field sobriety test. She was then taken to another part of the Station, where she submitted to breathalyzer tests. She had blood alcohol readings of .18 and .20 percent.

Hoskins was stopped on September 20, 1985, when he was seen driving erratically on the Long Beach Naval Station by Station police. His eyes were bloodshot and he reeked of an alcoholic beverage. He failed five field sobriety tests. He submitted to a breathalyzer test and had a blood alcohol reading of .22 percent.

2. 18 U.S.C. § 13 provides as follows:
   § 13. **Laws of States adopted for areas within Federal jurisdiction**
   Whoever within or upon any of the places now existing or hereinafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

3. Section 23157 provides in relevant part:
   § 23157. **Chemical blood, breath or urine tests**
   (a)(1) Any person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood, if lawfully *arrested for any offense allegedly committed in* violation of Section 23152 or 23153. The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23152 or 23153. The person shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result in a fine and (A) mandatory imprisonment if the person is convicted of a violation of Section 23152 or 23153, (B) the suspension of the person's privilege to operate a motor vehicle for a period of six months, (C) the revocation of the person's privilege to operate a motor vehicle for a period of two years if the person has been convicted of a separate violation of Section 23103 as specified in Section 23103.5, 23152, or 23153, within five years of the date of the refusal, or (D) the revocation of the person's privilege to operate a motor vehicle for a period of three years if the person has been convicted of two or more separate violations of Section 23103 as specified in Section 23103.5, 23152, or 23153, or any combination thereof, within five years of the date of the refusal.
   (2)(A) If the person is lawfully arrested for driving under the influence of an alcoholic beverage, the person has the choice of whether the test shall be of his or her blood, breath, or urine, and the officer shall advise the person that he or she has that choice.

   ... Section 23157.5 provides:
   § 23157.5. **Chemical blood, breath, or urine tests; advising persons submitting to breath tests; admissibility of evidence**
   (a) In addition to the requirements of Section 23157, a person who chooses to submit to a breath test shall be advised before or after the test that the breath-testing equipment does not retain any sample of the breath and that no breath sample will be available after the test which could be analyzed later by the person or any other person.
   (b) The person shall also be advised that, because no breath sample is retained, the person will be given an opportunity to provide a blood or urine sample that will be retained at no cost to the person so that there will be something retained that may be subsequently analyzed for the alcoholic content of the person's blood. If the person completes a breath test and wishes to provide a blood or urine sample to be retained, the sample shall be collected and retained in the same manner as if the person had chosen a blood or urine test initially.
   (c) The person shall also be advised that the blood or urine sample may be tested by either party in any criminal prosecution. The failure of either party to perform this test shall place no duty upon the opposing party to perform the test nor affect the admissibility of any other evidence of the alcoholic content of the blood of the person arrested.
   (d) No failure or omission to advise pursuant to this section shall affect the admissibility of any evidence of the alcoholic content of the blood of the person arrested.

Before submitting to a breathalyzer test, both Roberts and Hoskins were presented with a "Blood Alcohol Test Consent Form," which stated that under state law provisions failure to submit to a breathalyzer test would result in a six months driver's license suspension. Both were required to sign the form and take a breathalyzer test. Neither was given a choice of taking a blood or a urine test; neither was advised that a breath sample would not be retained for later verification of the breathalyzer test results.

California's implied consent law provides that a motor vehicle driver is deemed to have given consent to chemical testing of his blood, breath or urine for determining blood alcohol content. Cal.Veh.Code § 23157(a)(1). Failure to submit to such a test is punishable by fines, suspension of driving privileges, and imprisonment. *Id.* The statute further provides that drivers shall be given a choice of testing either their blood, breath or urine. Cal.Veh.Code § 23157(a)(2)(A). In addition, Cal.Veh.Code § 23157.5 provides that a person who chooses a breath test must be advised that no breath sample will be retained for later verification of the test results, although failure to so advise will not affect the admissibility of test results. These procedures were admittedly not followed.

The defendants were tried separately before a federal magistrate. Each filed a motion to suppress the breathalyzer test results; in each case the motion was denied. Both defendants were convicted. They appealed their convictions to the district court, where the appeals were consolidated. The district court determined that California's implied consent law provisions are not assimilated in a federal prosecution, and affirmed the judgments of conviction.

## ASSIMILATION OF IMPLIED CONSENT LAW PROVISIONS

Roberts and Hoskins argue that the Assimilative Crimes Act incorporates California's implied consent law provisions, including the provisions which require authorities to give suspects a choice of a blood, breath or urine test and to advise suspects that a breath sample will not be retained. This issue presents a question of law, which we review de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The purpose of the Assimilative Crimes Act is to conform the criminal law of federal enclaves to that of local law unless specific federal crimes have been enumerated. *United States v. Best,* 573 F.2d 1095, 1098 (9th Cir.1978). However, "only those California statutes making drunk driving a criminal offense and authorizing punishment therefor are assimilated into federal law under the [Assimilative Crimes] Act." *Id.* at 1098. *See also United States v. Sain,* 795 F.2d 888, 890 (10th Cir.1986) (federal courts are not required to follow provisions of state law which go beyond establishing the elements of an offense and the range of punishment). In *Best* this court reversed a magistrate's order suspending a motorist's driver's license after the motorist pleaded guilty to driving under the influence of alcohol on a federal enclave. *Id.* at 1103. We held that a driver's license suspension is not "punishment" under California law and thus the magistrate's order suspending the motorist's license could not be supported under the Assimilative Crimes Act on the basis of California law. *Id.* at 1100. Under the *Best* analysis the implied consent law provisions are not assimilated into federal law, since they neither make drunk driving a criminal offense nor authorize punishment for drunk driving. *See United States v. Rowe,* 599 F.2d 1319, 1320 (4th Cir.1979) (per curiam) (conviction under Virginia law for refusal to take a breathalyzer test reversed, since such a proceeding is civil and administrative, not criminal).

In *United States v. Wilmer,* 799 F.2d 495, 500 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987), we held that federal procedural rules, not state procedural rules, apply in prosecutions under the Assimilative Crimes Act. Wilmer challenged the admissibility of a report relating to the calibration of a breathalyzer machine, asserting that, under federal law, the report's author had to

be present to testify. The government relied on a state procedural rule requiring that defendants make a written demand seven days before trial for the production of the maintenance officer who had calibrated the breathalyzer. The district court applied the state rule and did not require the maintenance officer's testimony. *Id.* We held that the district court erred, because the Assimilative Crimes Act does not require the adoption of state procedural rules. *Id.*

California's implied consent law provisions are similarly regulatory and procedural and therefore are not assimilated under the Assimilative Crimes Act. Moreover, we note that even if they were assimilated, the failure to advise a suspect that the breathalyzer does not retain a sample would not affect the admissibility of the breathalyzer's results under California law. Cal.Veh.Code § 23157.5(d); *In re Cheryl S.*, 189 Cal.App.3d 1240, 235 Cal.Rptr. 42 (1987) (no due process concerns are implicated when the state fails to preserve nonexculpatory breath samples for independent testing; accordingly, there is no constitutional duty to advise suspect that breath samples are not preservable).

### CONSTITUTIONAL CHALLENGES

On appeal the defendants raise due process and equal protection challenges to the procedures followed by the Naval Station police. These constitutional challenges were not raised before the magistrate or the district court, and are, therefore, not subject to review. *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

### SUFFICIENCY OF THE EVIDENCE

Both defendants failed to move for judgment of acquittal pursuant to Rule 29, Fed. R.Crim.P. Neither, therefore, is entitled to challenge the sufficiency of the evidence on appeal. *United States v. Czaplicki*, 446 F.2d 640, 640 (9th Cir.1971) (per curiam).

AFFIRMED.