UNITED STATES of America, Plaintiff,

v.

Walter PARADES and Russell T. Soper, Defendants.

No. 89 CR 955.

United States District Court, N.D. Illinois, E.D.

Oct. 31, 1990.

Dean Polales, Asst. U.S. Atty., Office of the U.S. Atty., Chicago, Ill., for U.S.

Alan Blumenthal, Royal B. Martin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

## I. INTRODUCTION

Defendants are charged under the Assimilative Crimes Act, 18 U.S.C. § 13,[1] with conspiracy to commit murder and aggravated battery (punishable by Ill.Rev.Stat. ch. 38 ¶¶ 8–2, 9–1 and 12–4) and solicitation of murder (punishable by Ill.Rev.Stat. ch. 38 ¶¶ 8–1 and 9–1). Pending are various pretrial motions brought by defendants. This opinion addresses those motions which are brought by both defendants and all but one of the motions brought solely by defendant Parades.[2]

## II. REFERENCES TO INCARCERATION

■ Defendants have filed a motion in limine to preclude references at trial to the fact that the events alleged in the indictment occurred while defendants Parades and Soper were incarcerated at the Federal Prison Camp in Marion, Illinois and while Parades was later incarcerated at the Metropolitan Correctional Center ("MCC") in Chicago, Illinois. They argue that the only relevance of the fact of their incarceration is to establish federal jurisdiction under the Assimilative Crimes Act. Defendants are willing to stipulate to federal jurisdiction. Accordingly, they argue that evidence of their incarceration would be unduly preju-

---

1. The Assimilative Crimes Act provides, in part: Whoever within ... [the special maritime and territorial jurisdiction of the United States] is guilty of any act or omission which, although not made punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).

2. Several motions brought by defendant Soper remain pending, and the Court has postponed ruling on those motions in light of Soper's stated intent to enter a plea of guilty. Parades has brought a motion to dismiss the indictment on the ground of government misconduct, and a ruling on that motion will be issued separately.

dicial and should be excluded pursuant to Fed.R.Evid. 403.

The government contends that the fact of defendants' incarceration is a necessary part of the crime, and that the facts of the crime cannot be developed adequately without reference to the incarceration. In order to address this issue, it is necessary to review the facts as the government alleges them to be.

According to the government, Soper was incarcerated at Marion while serving a sentence for committing a $250,000 fraud on his former employer, Leaseway Transportation. That conviction provided the basis for a million-dollar civil RICO lawsuit which Leaseway Transportation brought against Soper. In order to hide his assets, Soper and his wife Jacquelyn filed a collusive divorce in December, 1984. Jacquelyn had previously been married to Robert Schmidt. Schmidt began to complain to his daughters from that marriage that Russell and Jacquelyn Soper were cheating the government and lying about their assets and that he planned to approach the Internal Revenue Service and the Federal Bureau of Investigation. Indeed, Schmidt had approached the FBI in May, 1984.

Meanwhile, Soper met Parades while they were both incarcerated at Marion. Soper solicited Parades to "take care of" Schmidt. Soper and Parades also met Dave McCoy at Marion, and Parades promised to pay McCoy $1500 to kill Schmidt. Subsequently, while both Parades and McCoy were in custody at the MCC, Parades made an initial payment of $750 to McCoy to kill Schmidt and gave McCoy a photograph of Schmidt.

The government states that in order to prove its case it must explain how the Marion prison telephone system operates. Most of the government's non-testimonial evidence consists of tape recordings of the defendants' conversations on that telephone system. These tapes cannot be adequately explained and presented to the jury without evidence of how Soper made collect calls to various persons outside the prison system. Furthermore, the government alleges that the conversations are in code, and the government wishes to explain the use of code by proving that defendants knew that the Marion inmate phones were monitored.

The government argues that it is also necessary to prove Parades' stay at the MCC. It must show that while he was at the MCC, Parades was released during the day on work release and was therefore able to communicate by telephone with Soper. Furthermore, the government cannot explain McCoy's role without explaining that he was also serving the work release portion of his sentence at the MCC. Finally, the government cannot explain how Parades came to trust McCoy to carry out the murder without explaining the relationship between the two men, which originated at Marion and continued at the MCC.

The Court agrees with the government that evidence of defendants' incarceration should not be excluded pursuant to Rule 403. The incarceration was such an integral part of the facts surrounding the conspiracy that to carve from the case all references to the places of incarceration would substantially hinder the government in proving its case. This is not a case where references to the incarceration or to a prior conviction would be gratuitous; the facts are probative and, indeed, central to the government's case. Because the probative value of this evidence is not "substantially outweighed by the danger of unfair prejudice," Rule 403 does not warrant exclusion of the evidence.

## III. REFERENCES TO ILLINOIS LAW

Defendants have moved to strike from the indictment all references to the Illinois statutes on which the government relies to support the charges under the Assimilative Crimes Act. Defendants argue that there exist disciplinary regulations promulgated by the Attorney General pursuant to congressional authority which govern the conduct in question. See 28 C.F.R. Part 541. These regulations proscribe punishment for certain infractions committed by inmates of a federal correctional facility. Defendants argue that because these congressionally authorized regulations apply to the alleged

conduct, the offenses do not come within the scope of the Assimilative Crimes Act, which incorporates state law only where the conduct is "not made punishable by any enactment of Congress."

■ Defendants would be correct if the regulations were of general applicability. However, the case law is unanimous in holding that regulations which constitute a disciplinary code applicable to a limited class of individuals, rather than regulations of general applicability, do not constitute "enactments of Congress" for purposes of the Assimilative Crimes Act; their existence does not, therefore, preclude prosecution under that Act for conduct which violates state criminal laws. *See e.g., United States v. Debevoise*, 799 F.2d 1401, 1402–03 (9th Cir.1986); *United States v. Mariea*, 795 F.2d 1094, 1096–98 (1st Cir.1986); *United States v. Walker*, 552 F.2d 566, 568 n. 3 (4th Cir.), *cert. denied*, 434 U.S. 848, 98 S.Ct. 157, 54 L.Ed.2d 116 (1977). Even the cases cited by defendants support this distinction. *See United States v. Pardee*, 368 F.2d 368 (4th Cir.1966). *United States v. Adams*, 502 F.Supp. 21 (S.D.Fla.1980). Because the regulations on which defendants' argument rests apply only to prisoners—a limited class of individuals—their motions to strike references to Illinois law are denied.

## IV. SPEEDY TRIAL

Defendant Parades was originally indicted in 1984 in case number 84 CR 952. Pursuant to the government's request, that indictment was dismissed without prejudice in August of 1985. Parades was subsequently indicted on November 14, 1989 for the same conduct. He argues that the delay between the dismissal of the original indictment in 1985 and the filing of the new indictment in 1989 violated his speedy trial rights. The first basis for this alleged violation is the Sixth Amendment to the United States Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Parades relies on *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), for his argument that the delay in this case runs afoul of the Sixth Amendment. In *Klopfer*, an indictment was suspended pursuant to a state procedure which permitted the indefinite suspension of an indictment, and the Court held that the procedure violated the Sixth Amendment.

■ The scope of *Klopfer* was clarified in *United States v. McDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), which found that the Sixth Amendment was not violated where the charges were dismissed in 1970 and reinstated in 1975. The Court held that "the Speedy Trial Clause has no application after the Government, acting in good faith,[3] formally drops the charges." *Id.* at 7, 102 S.Ct. at 1501. The Court further held that *Klopfer* was inapplicable because in that case the suspension of the charges was of indefinite duration and the charges were thus never dismissed in any real sense. *Id.* at 8 n. 8, 102 S.Ct. at 1502 n. 8.

In this case, Parades argues that *Klopfer*, rather than *McDonald*, controls because there was an indefinite suspension of the charges. This is a misrepresentation of the facts. The charges were not merely suspended, as they were in *Klopfer;* they were dismissed. Furthermore, this dismissal was not indefinite; it remained subject to the statute of limitations [and to principles of due process]. As the Court noted in *McDonald*, "[a]ny undue delay after charges are dismissed ... must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." *Id.* at 7, 102 S.Ct. at 1501.

■ Parades also argues that the delay violated his rights under the Due Process Clause—an argument to which he devotes approximately four lines of text. To prove that a pre-indictment delay violates the Due Process Clause is no easy task: "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *United States v. Lovasco*, 431 U.S.

---

**3.** Defendant makes no showing that the government in this case acted in bad faith.

783, 796, 97 S.Ct. 2044, 2051–52, 52 L.Ed.2d 752 (1977). Although the Court in *Lovasco* did examine the government's reasons for delaying, *id.* at 796, 97 S.Ct. at 2052, it also cautioned that "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *Id.* at 790, 97 S.Ct. at 2049. Rather, courts are limited to the determination of whether the delay "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define 'the community's sense of fair play and decency.'" *Id.* (citations omitted). The Supreme Court left to lower courts the task of applying these broad principles of due process to individual cases of pre-indictment delay. *Id.* at 797, 97 S.Ct. at 2052.

In this Circuit, a two-step inquiry is necessary: "First, the defendant must prove that she suffered actual and substantial prejudice. Second, the court must weigh the actual prejudice to the defendant against the government's reasons for the delay." *United States v. Doerr,* 886 F.2d 944, 964 (7th Cir.1989). With respect to the prejudice element, "the defendant must point quite specifically to how she was prejudiced, and the defendant's showing must be concrete, not speculative." *Id.*

In this case, Parades alleges the following prejudice:

> The trial bodes to involve numerous tape recordings of telephone conversations, in which it is alleged there are incriminating fragments of conversation to which the defendant was party. Parades will be hard put, by the passage of great time, to explain the context or meaning of these conversational fragments in his defense.

The Court cannot view this alleged problem as the type of specific prejudice necessary to show a due process violation. Indeed, Parades is actually advantaged by having the tapes available to refresh his recollection as to the events in question. Accordingly, Parades' due process claim must fail.

■ Furthermore, even if this assertion of prejudice were sufficient, Parades' due process claim fails because the prejudice is outweighed by the government's reasons for the delay. According to the government, after it dismissed the initial indictment it continued to investigate the case, focusing on the motive for the crime. The government gathered additional evidence of Soper's financial problems. Furthermore, the Drug Enforcement Agency began working with an informant while Parades was incarcerated on a drug charge, and the government did not wish to reindict defendant while the narcotics investigation continued. When the narcotics investigation culminated in a drug transaction in which Parades participated, the prosecutor in this case sought Parades' cooperation. Parades' attorney's hesitancy in response to this request resulted in an additional ten months of delay before both this case and the narcotics case were indicted.

These reasons for the delay represent legitimate government investigative interests, and they far outweigh any prejudice which Parades has suffered. Accordingly, the Court rejects Parades' due process claim.

## V. STATUTE OF LIMITATIONS

Defendants have moved to dismiss the indictment on the ground that the limitations period expired before the renewed indictment was filed. Defendants and the government disagree as to the applicable statute of limitations. Defendants argue that the limitations period is three years pursuant to Ill.Rev.Stat. ch. 38 ¶ 3–5(b).[4] The government argues that the limitations period is five years pursuant to 18 U.S.C. § 3282.[5] Because the alleged conspiracy terminated on December 21, 1984, and the

---

4. Unless otherwise provided, a prosecution "must be commenced within 3 years after the commission of the offense if it is a felony, or within one year and 6 months after its commission if it is a misdemeanor." Ill.Rev.Stat. ch. 38 ¶ 3–5(b).

5. "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282.

alleged solicitation for murder occurred on November 16, 1984, the indictment is timely if it is governed by the federal limitations period but is untimely if it is governed by the state limitations period.

■ The Court has found only one modern case which addresses the issue of which statute of limitations to an offense criminalized by state law and incorporated into federal law by § 13. In *United States v. Johnston*, 699 F.Supp. 226 (N.D.Cal. 1988), the court held that § 13 incorporates only the state's definition of, and penalty for, the offense, and does not incorporate the state's statute of limitations. *Cf. United States v. Muskovsky*, 863 F.2d 1319, 1330–31 (7th Cir.1988) (state procedural defenses are not incorporated into federal law for RICO purposes), *cert. denied*, 489 U.S. 1067, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989); *United States v. Bertman*, 686 F.2d 772, 774 n. 2 (9th Cir.1982) (although a substantive state law defense may be asserted in a Travel Act prosecution, court doubts that "non-substantive state law defenses, such as the running of the statute of limitations, are cognizable"). This Court agrees. Section 13 defines a federal crime; it is not merely a procedure whereby state criminal statutes are enforced by the federal government. *See Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 388–89, 64 S.Ct. 622, 625, 88 L.Ed. 814 (1944); *United States v. Sain*, 795 F.2d 888, 891 (10th Cir.1986); *United States v. Kiliz*, 694 F.2d 628, 629 (9th Cir.1982). As a federal crime, it is governed by federal procedures. Indeed, courts have consistently held that § 13 does not assimilate state laws which are inconsistent with federal policies expressed in federal statutes. *See Sain*, 795 F.2d at 891; *Cheyenne–Arapaho Tribes of Oklahoma v. State of Oklahoma*, 618 F.2d 665, 668 (10th Cir.1980).

■ Accordingly, § 13 proceedings are governed by federal law with respect to the sufficiency of the indictment, *see United States v. Fesler*, 781 F.2d 384, 392 (5th Cir.), *cert. denied*, 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 661 (1986), the right to a jury trial, *see Sain*, 795 F.2d at 891, application of the exclusionary rule, *see Smay-*

*da v. United States*, 352 F.2d 251, 253 (9th Cir.1965), *cert. denied*, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966), admission of evidence, *see United States v. Wilmer*, 799 F.2d 495, 500 (9th Cir.1986), *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987), and parole terms, *see United States v. Binder*, 769 F.2d 595, 600 (9th Cir.1985); *United States v. Pinto*, 755 F.2d 150, 154 (10th Cir.1985); *United States v. Vaughan*, 682 F.2d 290, 294 (2d Cir.1982), *cert. denied*, 459 U.S. 946, 103 S.Ct. 261, 74 L.Ed.2d 203 (1982). Similarly, because § 13 creates a federal crime, this Court agrees with *Johnston* that it is governed by the federal statute of limitations. The motions to dismiss the indictment on statute of limitations grounds are therefore denied.

## VI. OTHER BAD ACTS

■ Defendant Parades has moved for an order requiring the government to give notice of any intent to use evidence of other crimes, wrongs or bad acts. Specifically, he seeks advance notice of both the government's intent to introduce evidence covered by Federal Rule of Evidence 404(b) and the government's intent to introduce evidence of covered by Rule 608(b). With respect to Rule 404(b), the government states that it is providing such notice sufficiently in advance to allow defendant to file any appropriate motions in limine. Accordingly, there is no dispute and Parades' motion is denied pursuant to Local Rule 2.04. However, the motion is denied without prejudice to defendant's right to renew it twenty-one days prior to trial if notice has not then been provided.

■ With respect to Rule 608(b), Parades' request is denied because he is only entitled to notice of evidence of other crimes, wrongs or acts to be used in the government's case-in-chief, not evidence used in cross-examination or rebuttal. *See* Fed.R.Crim.P. 12(d)(2); *United States v. Savides*, 661 F.Supp. 1024, 1026 (N.D.Ill. 1987), *aff'd*, 898 F.2d 1218 (7th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990).

## VII. CONCLUSION

For the reasons described above, the Court denies the motions in limine, the motions to strike references to Illinois law, the motions to dismiss on the basis of the statute of limitations, Parades' motion to dismiss for violation of his speedy trial rights, and Parades' motion for an order requiring notice of evidence of other acts.