Daniel Bent, Phillip M. Payne, Jr., Sp. Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff.

Deana Spencer, Federal Public Defenders Office, Honolulu, Hawaii, for defendant.

**UNITED STATES of America, Plaintiff,**

v.

**Daniel SPIVEY, Jr., Defendant.**

**Crim. No. 90–1735 ACK.**

United States District Court, D. Hawaii.

Dec. 20, 1991.

### ORDER AFFIRMING MAGISTRATE'S ORDER DENYING DEFENDANT'S DEMAND FOR JURY TRIAL

KAY, Chief Judge.·

### I. INTRODUCTION

Defendant appeals the Magistrate's order denying defendant's demand for a jury trial. For the following reasons, the court affirms the Magistrate's order.

### II. FACTS

Defendant was charged with driving under the influence and driving with an illegal blood alcohol level on a federal military

reservation. He was charged under the Assimilative Crimes Act (ACA), 18 U.S.C. § 13.

Defendant demanded a jury trial. The Magistrate denied the demand. Plaintiff appeals the Magistrate's decision.[1]

## III. DISCUSSION

### A. STANDARD OF REVIEW

Under Local Rule 404-1, an appeal of a Magistrate's order dealing with a non-dispositive matter is reviewed under the "clearly erroneous or contrary to law" standard.

Both parties assert that this case presents a question of constitutional law, and therefore the standard of review is *de novo*. *See* defendant's opening brief, at 3 (citing *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)); U.S.'s responding brief, at 2 (same).

Since the issue presented is purely a question of law, the court finds there is little difference between reviewing the issue under either the *"de novo"* or "clearly erroneous or contrary to law" standards. The court is required to make a *"de novo"* examination of the law in order to determine whether the Magistrate was "clearly erroneous" or "contrary to law."

### B. THE MERITS

■ The ACA provides that

[w]hosoever within or upon any [federally reserved land] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of

a like offense and subject to a like punishment.

. . . . .

For purposes of subsection (a) of this section, that which may or shall be imposed through judicial or administrative action under the law of a State ... for a conviction for operating a vehicle under the influence of a drug or alcohol, shall be considered to be punishment provided by law.

18 U.S.C. § 13(a), and (b).

The [ACA] ... subjects persons to federal prosecution in federal court for violations of criminal statutes of the state in which the federal lands are located. The ACA transforms a crime against the state into a crime against the federal government. [citations] Congress, in enacting the ACA, sought to accomplish three goals. First, the ACA establishes a gap-filling criminal code for federal enclaves. Second, the ACA provides for conformity in the laws governing a federal enclave and the state in which the enclave is located. Third, the ACA should give the people within the federal enclave as much protection as is afforded to those outside of the enclave. [citations].

*United States v. Kiliz*, 694 F.2d 628, 629 (9th Cir.1982). The ACA " 'incorporates into federal law only the *criminal* laws of the jurisdiction within which the enclave exists; it is, itself, a penal statute.' " *U.S. v. Carlson*, 900 F.2d 1346, 1347 (quoting *United States v. Best*, 573 F.2d 1095, 1098 (9th Cir.1978)) (emphasis in original).[2] Although "a state's penal laws [should] be uniformly applied to citizens on and off federal enclaves," *United States v. Marcyes*, 557 F.2d 1361, 1364–65 (9th Cir.1977), "[t]he [ACA] incorporates state substantive criminal law as federal substantive law ... [but] does not generally adopt state procedures." *United States v. Kearney*, 750

---

**1.** The court notes that in addition to defendant's opening and reply briefs and the government's responding brief, it considered supplemental memos from the parties on the issues of the appealability of the Magistrate's order denying defendant's demand for a jury trial and whether defendant would be sentenced, if found guilty,

under the new penalty provisions of H.R.S. § 291–4 that became effective on July 1, 1991 or the predecessor provisions of § 291–4.

**2.** Defendant does not dispute that HRS § 291–4 is a criminal statute.

F.2d 787, 789 (9th Cir.1984) (citation omitted); *see also U.S. v. Wilmer*, 799 F.2d 495, 500 (9th Cir.1986), *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987). Moreover, "federal courts are not required to follow provisions of state law which go beyond establishing the elements of an offense and the range of punishment." *U.S. v. Roberts*, 845 F.2d 226, 228 (9th Cir.), *cert. denied*, 488 U.S. 845, 109 S.Ct. 121, 102 L.Ed.2d 95 (1988) (citing *United States v. Sain*, 795 F.2d 888, 890 (10th Cir.1986)). "The [ACA] creates a federal offense; it refers to the [state] statutes for its definition and its penalty, but does not incorporate the whole criminal and constitutional law of [the state]." *Smayda v. United States*, 352 F.2d 251, 253 (9th Cir.1965), *cert. denied*, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966). State court interpretations of the assimilated state law are "purely advisory" because "the assimilated state law, in effect, becomes a federal statute." *Kiliz*, 694 F.2d at 629. "[P]rovisions of state law relating to the prosecution are assimilated only if they do not conflict with federal laws on the point." *U.S. v. Garner*, 874 F.2d 1510, 1512 (11th Cir.1989) (*citing Sain*, 795 F.2d at 890–91; *United States v. Holley*, 444 F.Supp. 1361, 1362 (D.Md.1977)).

■ Defendant was charged with two counts of violating the ACA. Count one was based on a violation of HRS 291–4(a)(1), operating a vehicle under the influence of intoxicating liquor. Count two was based on HRS 291–4(a)(2), operation of a vehicle with a blood alcohol level of .10 or more. This was defendant's first offense under this statute.

In *State v. O'Brien*, 68 Haw. 38, 704 P.2d 883 (1985), the Hawaii Supreme Court held that a person charged with violating § 291–4 is entitled to a jury trial. The Hawaii Supreme Court held that a violation of § 291–4 carried a maximum term of

imprisonment of 6 months, and that the Hawaii legislature considered the statute to be a "constitutionally serious offense." 68 Haw. at 44 n. 5, 704 P.2d 883; *id.* at 43, 704 P.2d 883.[3]

Defendant claims that because the Hawaii courts consider a violation of § 291–4 a "serious" offense which entitles a defendant to a jury trial, defendant should be entitled to a jury trial in federal court under the ACA.

The above case law indicates that the ACA assimilates Hawaii law only to the extent of the elements of the offense and the range of punishment. *Roberts*, 845 F.2d at 228; *Smayda*, 352 F.2d at 253. Hawaii's law dealing with defendant's right to a jury trial is thus not "incorporated," *Smayda*, 352 F.2d at 253, and is "purely advisory." *Kiliz*, 694 F.2d at 629. The court is "not required to follow" Hawaii's "jury trial right" law when considering the ACA. *Roberts*, 845 F.2d at 228. Furthermore, if Hawaii's provision giving defendants a right to a jury trial "is in conflict with the federal rule that the right to a jury exists only for the trial of 'serious' offenses, ... the provision must be disregarded." *Garner*, 874 F.2d at 1512.

The inquiry of whether a defendant is entitled to a jury trial in federal court under the ACA is determined by federal and not state law. *U.S. v. Bencheck*, 926 F.2d 1512, 1513 n. 6 (10th Cir.1991); *Garner*, 874 F.2d at 1512. Under federal law, there is no right to a jury trial when the charged crime is a "petty crime or offense[ ]." *Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 1291, 103 L.Ed.2d 550 (1989); *Sain*, 795 F.2d at 891 (citing *Codispoti v. Pennsylvania*, 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974)).

The Hawaii Supreme Court has recently accepted a case that could well eliminate the right to a jury trial for persons charged with violations of § 291–4. *See* Honolulu Advertiser, September 18, 1991, at A–1 ("1,800 DUI cases in limbo"). Moreover, the right could be eliminated retroactively. *Id.*

---

3. The *O'Brien* holding is in doubt. Defendant is a first time offender under § 291–4. Effective July 1, 1991, first time offenders under § 291–4 are subject to a maximum imprisonment of 30 days. *See* HRS § 291–4(b)(1)(C)(ii) (1991). *O'Brien* was decided when the maximum imprisonment under § 291–4 was 6 months. *See O'Brien*, 68 Haw. at 44 n. 5, 704 P.2d 883.

Under 18 U.S.C. § 19, a "petty offense" is described as

a Class B misdemeanor, a Class C misdemeanor, or an infraction, for which the maximum fine is no greater than the amount set forth for such an offense in section 3571(b)(6) or (7) in the case of an individual or section 3571(c)(6) or (7) in the case of an organization.

The maximum fine set forth for an individual in 18 U.S.C. § 3571(b)(6)–(7) is $5,000. The maximum imprisonment term for a Class B misdemeanor is six months, and for a Class C misdemeanor thirty days. 18 U.S.C. § 3559(a)(7)–(8). HRS § 291–4 has a maximum penalty of six months imprisonment and a maximum fine of $1,000.

Based on this, a violation of § 291–4 is a "petty offense" under federal law and thus bars defendant from trying his case to a jury. This is contrary to *O'Brien* where the Hawaii Supreme Court concluded that a jury trial was necessary. Therefore, Hawaii's law, as extrapolated in *O'Brien*, is not assimilated by the ACA because it conflicts with federal law. *Bencheck*, 926 F.2d at 1513 n. 6; *Garner*, 874 F.2d at 1512; *Sain*, 795 F.2d at 891; *Cheyenne–Arapaho Tribes of Oklahoma v. State of Oklahoma*, 618 F.2d 665, 668 (10th Cir.1980).

Moreover, any argument that the penalties over and above the maximum prison term and fine mandated by § 291–4 for a first time offender, (i.e., a fourteen-hour alcohol abuse program, a maximum 90 day suspension of driver's license, and up to 72 hours of community service work), boost a violation of § 291–4 out of the "petty" classification into a "serious" crime thus requiring a jury trial is meritless. *See e.g., Blanton*, 109 S.Ct. at 1291 (Court found DUI law very similar to Hawaii's a "petty" offense where maximum penalty included 6 months of imprisonment (or, alternatively, 48 hours of community service work while dressed in garb identifying the defendant as a DUI offender), a fine of up to $1,000, driver's license suspension up to 90 days, and attendance at an alcohol abuse program at defendant's expense); *Garner*, 874 F.2d at 1511 (court found similar DUI law "petty" where it contained imprisonment up to 6 months, fine up to $500, attendance at a substance abuse program at defendant's expense, up to one year probation (including 50 hours of community service as part of probation), and revocation of driver's license up to 1 year); *compare United States v. Craner*, 652 F.2d 23 (9th Cir.1981) (pre-*Blanton*, non-ACA prosecution for DUI; court held defendant was entitled to jury trial where penalties consisted of maximum penalty of 6 months imprisonment, $500 fine, and payment of costs, and suspension of license).[4]

The preceding case law makes it very clear that, under the ACA, defendant does not have a right to a jury trial for a first time violation of HRS § 291–4.

Defendant claims that his Due Process and Equal Protection rights were violated by the Magistrate's denial of his jury demand. Defendant does not argue that the ACA violates his equal protection rights; rather he argues the Magistrate's incorrect denial of the jury demand was violative of equal protection. The gist of the argument is that defendant is deprived of equal protection of the laws because he is treated one way (no jury trial) under federal law while someone else being prosecuted for the same crime in state court is treated differently (i.e., jury trial).

Defendant's argument regarding equal protection is without merit. Defendant's analysis hinges on the assumption that a violation of § 291–4 in state court and the same violation under the ACA are violations of the same crime. This is incorrect. As the foregoing case law demonstrates, the crime assimilated by the ACA becomes a *separate* federal crime wherein only the elements of an offense and the range of punishment are assimilated. Thus, a violation of § 291–4 on state land is a different, albeit similar, crime than that same violation committed on federal property. In other words, defendants on state and feder-

---

4. The holding in *Craner* is in doubt in light of *Blanton* which found that substantially similar penalties did not require a jury trial.

al property are not similarly situated. The disparate treatment of defendants in state and federal court are the result of prosecutions based on two different crimes—HRS § 291–4 and the ACA. There is no violation of equal protection under the laws because there are two different laws involved. Moreover, there are two different entities (the state and the U.S.) involved in prosecuting the two separate statutes. Defendant's argument is tantamount to asserting that because there are differing procedures and substantive law between parallel state and federal prosecutions of, for example, distribution of drugs (or any other crime that is punishable by both the state and federal government) then there is a violation of equal protection. The court rejects defendant's equal protection argument.

Defendant also asserts a violation of his Due Process rights. The court understands defendant to assert that the refusal to provide a jury trial violates Due Process.

Defendant has cited no authority for this proposition. Moreover, based on the foregoing, defendant has no right to a jury trial under the Constitution because he is charged with a "petty" crime. Since there is no violation of the Constitution, a deprivation would offend neither the procedural nor substantive branches of Due Process. Therefore, the court rejects this argument.

It appears that defendant's main contention is that the Magistrate simply misinterpreted the ACA in denying defendant's demand for a jury trial. However, as the foregoing illustrates the Magistrate did not err. Defendant is not entitled to a jury trial under the ACA because the crime he is charged with is a "petty" offense. However, the court will address several arguments that defendant makes.

Defendant seems to argue that the ACA is designed to put federal defendants in exactly the same position as state defendants with respect to the assimilated crime. This is simply an incorrect assumption on defendant's part. See Roberts, 845 F.2d at 228; Sain, 795 F.2d at 891; Kiliz, 694 F.2d at 629; Smayda, 352 F.2d at 253.

Defendant also argues that because the Hawaii Supreme Court determined that § 291–4 was a "serious" crime mandating a jury trial, then the federal court is required to do the same. This assertion is misguided. The issue of whether a defendant in federal court under the ACA is entitled to a jury trial is a question of federal, and not state law. Bencheck, 926 F.2d at 1513 n. 6; Garner, 874 F.2d at 1512.

Defendant criticizes Garner, claiming that the portion of the opinion holding that federal law dictates whether a defendant is entitled to a jury trial was dicta. Alternatively, defendant argues that Garner failed to consider the policies underlying the ACA, and illogically jumped to the conclusion that federal law dictates whether a defendant is entitled to a jury trial.

The portion of Garner that defendant criticizes is not dicta. Because the case was in federal court, the court first determined that under federal law, i.e., Blanton, defendant had no right to a jury trial. Defendant then argued, as the defendant in this case does, that because state law gave him a right to a jury trial he should have been afforded the same in federal court. In response to this argument, the court made the holding that defendant calls dicta. This holding was not dicta but rather was necessary to address defendant's argument that state law should govern.

Moreover, the court's decision that federal law controlled with respect to the jury trial issue was consistent with case law construing the ACA. As discussed above, state law inconsistent with federal law is not assimilated. Bencheck, 926 F.2d at 1513 n. 6; Garner, 874 F.2d at 1512; Sain, 795 F.2d at 891; Cheyenne–Arapaho Tribes of Oklahoma, 618 F.2d at 668 (citing Johnson v. Yellow Cab Co., 321 U.S. 383, 389–90, 64 S.Ct. 622, 625, 88 L.Ed. 814 (1944); Stewart & Co. v. Sadrakula, 309 U.S. 94, 103–04, 60 S.Ct. 431, 435–36, 84 L.Ed. 596 (1940)). In Garner, the court determined that under Blanton, federal law did not require a jury trial. The state law at issue in Garner granted defendant the right to a jury trial and therefore was clearly contrary to Blanton. Thus, Gar-

*ner*'s holding that federal law controlled was not illogical or contrary to the policies underlying the ACA. Although the ACA attempts to "uniformly appl[y] [the assimilated crime] to citizens on and off federal enclaves," *Marcyes,* 557 F.2d at 1364–65, the assimilation occurs only insofar as state law is not inconsistent. In addition, it seems illogical for a state court to dictate to a federal court whether that federal court must afford a federal defendant the right to a jury trial in federal court. It seems clear that a defendant's right to a jury trial under the federal Constitution in federal court should be decided pursuant to federal and not state law.

Defendant also seems to object to the Magistrate's order insofar as it uses *Blanton* to determine whether § 291–4 is a "serious" or "petty" offense. Defendant argues the *Blanton* was limited solely to the issue of whether the *Nevada* DUI statute was "serious." Defendant argues that *Blanton* is either inapplicable or distinguishable from the case at bar because in Hawaii there was a right to a jury trial for such offenses while in Nevada there was not. Defendant argues that application of *Blanton* in light of *O'Brien* would mandate a finding that § 291–4 is a "serious" offense mandating a jury trial.

The court disagrees. *Blanton* did involve whether a defendant had a right to a jury trial under Nevada law. However, *Blanton* is not limited to Nevada. The Court used federal law analysis that is applicable to any state to determine whether, under the Sixth Amendment, a defendant has a right to a jury trial. Such analysis is equally applicable to the case at bar. The only factor that changes in the analysis are the penalties mandated by § 291–4 versus the penalties under the Nevada statute.

*Blanton* made clear that when a sentence "does not exceed six months [there is] [a] presumption [that] exists that the [state] legislature views [the crime] as a 'petty' offense for purposes of the Sixth Amendment." 109 S.Ct. at 1293. Unless the state "legislature has clearly indicated that [a crime carrying a penalty of six

months or less] is a 'serious' offense," *id.,* the crime is considered "petty." "[T]he most relevant … criteria" for determining whether a crime is "serious" is the penalty. *Id.* at 1292. "A legislature's view of the seriousness of an offense is also reflected in the other penalties [besides the imprisonment term] that it attaches to the offense." *Id.*

The foregoing indicates that notwithstanding the Hawaii Supreme Court's interpretation of the Hawaii legislature's intent regarding § 291–4 in *O'Brien,* the fact that the legislature mandated a maximum penalty of 6 months raises a presumption that the Hawaii legislature did not consider § 219–4 a "serious" crime. Moreover, the other penalties imposed by § 291–4 are very similar to those imposed in *Blanton* and were not found to raise the crime to a "serious" one. Thus, notwithstanding *O'Brien,* § 291–4, under *Blanton,* is a "petty" crime which does not require a jury trial.

Further support for this holding is found in the current version of § 291–4. *See* § 291–4(b)(1)(C)(ii) (1991). It is highly doubtful that the Hawaii legislature considered a first-time offense under § 291–4 as "serious" at the time that Spivey was arrested. Spivey was arrested in October of 1990 and charged in November 1990. Before Spivey was arrested or charged, section 291–4 was amended by the legislature in April of 1990 and signed into law by the Governor in June of 1990. As discussed *supra* at footnote 2, the 1990 amendment to § 291–4 reduced the penalty for a first-time offender to 30 days—clearly an indication that the legislature did not consider the offense "serious."

In fact, under *Blanton,* the analysis employed in *O'Brien* appears flawed. For example, *O'Brien* referred to common law crimes that were triable to a jury in determining whether there was a right to a jury trial for a violation of § 291–4. 68 Haw. at 42, 704 P.2d 883. *O'Brien* found that a DUI charge was analogous to a charge of reckless driving and that reckless driving was indictable and triable to a jury under

the common law. *Id.*[5] Therefore, *O'Brien* found that defendant under § 291–4 was entitled to a jury trial. *Blanton* held that while such analysis was used in "early decisions," [i]n recent years, however, [the Court] ha[s] sought more " 'objective indications.' " *Blanton,* 109 S.Ct. at 1291–92. *Blanton* noted that today " 'the most relevant' " indication was " 'the severity of the maximum authorized penalty.' " *Id.* at 1292. A simple application of the contemporary *Blanton* criteria leads to the conclusion that HRS § 291–4 is "petty."

This is not "the rare situation where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless 'do not puncture the 6–month incarceration line' " and which would mandate a jury trial. *Blanton,* 109 S.Ct. at 1293.

### IV. CONCLUSION

Defendant is not entitled to a jury trial under either the ACA, the Equal Protection Clause, or the Due Process Clause. Accordingly, the Magistrate's order is affirmed.

---

**5.** *Craner* noted that the conclusion that reckless driving was indictable under common law was questionable. *See Craner,* 652 F.2d at 26 n. 3.