**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William R. SMYER and Byron R. May,**
**Defendants-Appellants.**

Nos. 78–1134, 78–1135.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 26, 1979.

Decided April 2, 1979.

Rehearing Denied April 30, 1979.

Robert Bruce Collins, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., with him, on brief), for plaintiff-appellee.

Frederick H. Sherman, Deming, N. M. (Sherman & Sherman, Deming, N. M., with him, on briefs), for defendants-appellants.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

After trial to the court without a jury, the defendants-appellants were found guilty of each count of an eleven-count information charging violations of 16 U.S.C. § 433 which relates to American antiquities. They received 90-day concurrent sentences on each count.

The offenses occurred in the Mimbres Ranger District, Gila National Forest, New Mexico. Count I charges that, without permission from the Secretary of Agriculture, the defendants excavated a prehistoric Mimbres ruin at an archaeological site, herein designated as 250, which was inhabited about 1000–1200 A.D. Count II charges excavation of a ruin at a site designated as 251. Counts III through XI charge the appropriation from the ruins of specified objects of antiquity, 800–900 years old.

The two sites are about 300 yards apart and may be approached either from the north or the south. Forest Rangers had observed "very wide, deep-lugged" tire tracks at the sites. On October 29, 1977, a Forest Service Recreation Officer, Roybal, discovered that a vehicle with "wide, deep-lugged" tires had entered the northern road leading to the sites and had passed a Forest Service sign warning that the area was protected by the American Antiquities Act. Upon his request for assistance, Ranger Bradsby and Enforcement Officer Dresser came and the three followed the tire tracks to the ruins. They found freshly dug holes at each ruin, shovels, picks, a sifting screen, and a small pottery bowl. In an arroyo between the sites they found a four-wheel drive truck, the tires on which matched the earlier discovered tire marks. No one was present at the sites. The officers inventoried the contents of the truck and had it towed away. That evening defendant May came to Ranger Bradsby's home and said that "he had been scouting for deer and that his truck had been stolen." A few days later federal officers interviewed, and obtained statements from, both May and Smyer. The officers took some artifacts from Smyer's home without objection and later, on the execution of a search warrant, seized other pieces of Indian bowls.

Defendants urge that the Antiquities Act is unconstitutional because it is vague and uncertain. The Act, which was passed in 1906, provides:

"Any person who shall appropriate, excavate, injure, or destroy any historic or prehistoric ruin or monument, or any object of antiquity, situated on lands owned or controlled by the Government of the United States, without the permission of

the Secretary of the Department of the Government having jurisdiction over the lands on which said antiquities are situated, shall, upon conviction, be fined in a sum of not more than $500 or be imprisoned for a period of not more than ninety days, or shall suffer both fine and imprisonment, in the discretion of the court."

The claim of vagueness and uncertainty is based on the use in the statute of the words "ruin," and "object of antiquity." In *United States v. Diaz*, 9 Cir., 499 F.2d 113, 114–115, the Ninth Circuit held that "the statute, by use of undefined terms of uncommon usage, is fatally vague in violation of the due process clause of the Constitution." We respectfully disagree. In *Diaz* the charge was appropriation of objects of antiquity consisting of face masks found on an Indian Reservation. The masks had been made in 1969 or 1970. The government evidence was that " 'object of antiquity' could include something that was made just yesterday if related to religious or social traditions of long standing." Id. at 114. Those facts must be contrasted with the instant case where the evidence showed that objects 800–900 years old were taken from ancient sites for commercial motives. We do not have a case of hobbyists exploring the desert for arrow heads. See, id. at 114. Defendants admitted visiting the sites on several occasions and May had sold Mimbres bowls to an archaeologist.

The charges here were the excavation of two ruins and the appropriation of several objects of antiquity. The defendants' attack can go only to "ruin" and "antiquity." A ruin is the remains of something which has been destroyed. Webster's New International Dictionary, 2d Ed., 1960, p. 2182, ruin (4). Antiquity refers to "times long since past." Id. p. 119, antiquity (1). When measured by common understanding and practice, the challenged language conveys a sufficiently definite warning as to the proscribed conduct. *United States v. Petrillo*, 332 U.S. 1, 8, 67 S.Ct. 1538, 91 L.Ed. 1877; see also *United States v. Goeltz*, 10 Cir., 513 F.2d 193, 196–197, cert. denied, 423 U.S. 830, 96 S.Ct. 51, 46 L.Ed.2d 48.

The case under consideration is not a "sit-in" case like *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894, a vagrancy case like *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110, nor an antipicketing case like *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222. We are not concerned with the deprivation of any First Amendment right. In their briefs defendants charge selective enforcement, but their claim has no support in the record. The statute in question was designed for the protection of American antiquities. It affects the property of the United States and is well within the power over public lands given to Congress by the federal Constitution. Art. IV, § 3, cl. 2.

In assessing vagueness, a statute must be considered in the light of the conduct with which the defendant is charged. See *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561. The Antiquities Act gives a person of ordinary intelligence a reasonable opportunity to know that excavating prehistoric Indian burial grounds and appropriating 800–900 year old artifacts is prohibited. See *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222. We find no constitutional infirmity in § 433.

The Gila National Forest was established in 1899. *United States v. New Mexico*, 938 U.S. 696–699, 98 S.Ct. 3012, 3013, 57 L.Ed.2d 1052. The Secretary of Agriculture has jurisdiction over historic sites within forest reserves. 43 C.F.R. § 3.1(a). To bolster their claim that they did not know they were in the National Forest, defendants argue that the Department gave inadequate notice that the two sites were on government land. The tire tracks of the vehicle went by an Antiquities Act sign. When the defendants saw the forest officers, one of whom was in uniform, they fled. Each defendant in his statement to officer Dresser admitted that he had been to the site several times. Mimbres bowls were found in Smyer's home. The trial court rejected the defendants' claim that they believed they were on private proper-

ty. The overwhelming evidence shows violations of § 433.

■ Defendants claim that they were wrongfully denied a jury trial in violation of the Sixth Amendment. In *Baldwin v. New York*, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437, the Court said:

"[N]o offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized."

The maximum penalty authorized by the Antiquities Act is 90 days imprisonment plus a fine of $500. Violations of the Act are petty offenses under 18 U.S.C. § 1. The information contained 11 counts, each of which was charged as a separate offense. Each defendant was found guilty of each count. If consecutive sentences were imposed, the potential existed of 990 days imprisonment. The court sentenced defendants to 90 days on each count with the sentences to run concurrently.

The case was set for trial in Albuquerque, New Mexico on December 12, 1977. By written motion the defendants requested that the trial be held in Las Cruces, New Mexico. The court then set the trial for January 9 in Las Cruces. The defendants requested a jury. The court said that no jury would be available in Las Cruces and that the defendants could have a jury trial in Albuquerque on January 23. After some discussion the defendants and their counsel each signed waivers of jury trial. Government counsel also signed waivers and they were approved by the court. The record shows that the waivers were made knowingly, voluntarily and with the approval of competent counsel. See *Adams v. United States*, 317 U.S. 269, 275–278, 63 S.Ct. 236, 87 L.Ed. 268.

On this appeal defendants assert that they could not have a fair trial in Albuquerque. The record contains nothing to sustain this contention. In the trial court, defendants claimed that they could not afford a trial in Albuquerque. At the sentencing the trial court, with regard to this contention, said it "is simply not a fact." The waivers were made freely and intelligently and defendants are bound thereby.

In any event, defendants' reliance on *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912, is misplaced. That case held that where consecutive sentences aggregating more than six months are imposed, defendant has a right to a jury trial. Here, concurrent sentences of less than six months were imposed. Where the actual sentence for multiple petty offenses is less than six months, there is no jury trial right. See, *Muniz v. Hoffman*, 422 U.S. 454, 475–476, 95 S.Ct. 2178, 45 L.Ed.2d 319, and *Taylor v. Hayes*, 418 U.S. 488, 495–496, 94 S.Ct. 2697, 41 L.Ed.2d 897. *Scott v. Illinois*, —— U.S. ——, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) which deals with a defendant's right to counsel, is consistent with this view.

■ Defendants assert that the government did not comply with Rule 16, F.R. Crim.P., relating to discovery and inspection. At the trial much controversy arose over the government's compliance with a defense motion for discovery. One dispute related to a map of the area in which the antiquity sites were located. The defense claimed that they did not know that they were on government property. A land surveyor presented an area map. The defense claims that they did not receive an exact copy and that the evidence given by the surveyor included scientific tests or experiments within the purview of Rule 16(a)(1)(D). We are not impressed. We are convinced that the government complied with Rule 16. The record sustains the government's contention that the defendants knew they were on government land. If there was any misunderstanding about the map, the defendants were not prejudiced.

■ The defendants assert that the statements which they made to the officers should have been suppressed. The first complaint relates to statements of May to officer Bradsby on the evening that the officers impounded the truck. May came to Bradsby's home to inquire about the truck which, he said had been taken while he was

"scouting for deer." Bradsby told him that the truck had been impounded. All the officer did was to answer defendant May's questions. Bradsby's testimony was properly received.

■ Officer Dresser separately interviewed Smyer and May. Neither was in custody at the time. Dresser gave each the required *Miranda* warnings and each signed a "Waiver of Rights." Each defendant was educated, intelligent, and under no compulsion. Dresser denied defendants' claims of threats and promises of leniency. Credibility is a matter for the trier of the facts. The court chose to believe Dresser. The defendants' statements were properly received.

■ The next objection goes to the receipt in evidence of the tangible objects which are the bases of Counts III to XI. During his interview with officer Dresser, May admitted digging at the ruins and selling two bowls. May offered to return the artifacts. At Smyer's home, May selected a number of artifacts from a collection and turned them over to the officer. Later the officer returned to Smyer's home with a search warrant and seized 31 bowls. A government expert testified that certain bowls were "all Mimbres classic or Mimbres Black on White Bowls." A shard found at the site fitted one of the bowls. A government expert placed the value of the artifacts taken by the defendants at about $4,000. The sites were prehistoric ruins inhabited by Mimbres Indians, a sub-group of the Mogollon culture, from about 1000 to 1200 A.D., and the bowls were made sometime during that period. The questioned evidence was either given voluntarily to the officer or obtained by a search warrant of unquestioned validity. The bowls were adequately identified with the site, both by physical evidence and the admissions of the defendants. The evidence was properly received.

■ Defendants object to the receipt in evidence of a photograph of defendant May, seized by the officers during an inventory search of the truck. The photo showed May standing with a skull on his head and on each shoulder. He was holding skeletal bones in his hands. The evidence showed the presence of skeletal bones at the sites. On cross-examination May said that the photo was of him.

After the officers found the truck, they investigated the surrounding area and found no one. They decided to impound the truck and made a routine inventory of its contents. While doing so, officer Roybal lowered a sun visor, and the questioned photo fell down. The routine inventory protected the owner's property while in police custody, protected the officers against claims and disputes and against potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 368–372, 96 S.Ct. 3092, 49 L.Ed.2d 1000, sustains the actions of the officers. They had reasonable cause to connect the truck with the excavations at the sites, and it had been abandoned. The seizure of the photo was proper. The evidence showed that the picture had been taken at site 250. The picture connected May with the site and was properly received in evidence.

Ranger Bradsby testified that the special-use permits, which authorized exploration of antiquity sites, were kept in his office and that neither May nor Smyer had a permit. The government introduced a computer print-out which named those who had the necessary permits. The introduction of the print-out is said to violate the Rules of Evidence, particularly Rule 802 (hearsay) and 602 (witnesses-lack of personal knowledge). The government says that the print-out is admissible under Rule 803(6) (Records of regularly conducted activity). The controversy need not be decided because other evidence showed that defendants did not have a permit, and they did not claim to have one. The government did not need to offer the print-out to prove its case, and the defendants were not prejudiced by its receipt.

Affirmed.