**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kevin L. BENCHECK,**
**Defendant–Appellant.**

**No. 90–6072.**

United States Court of Appeals,
Tenth Circuit.

Feb. 27, 1991.

Leslie M. Kaestner (Timothy D. Leonard, U.S. Atty. D. Okl., Melissa L. Pappamichiel, Captain, U.S. Army, Judge Advocate General's Corps, with her on the briefs), Asst. U.S. Atty., D. Okl., for plaintiff-appellee.

Jill M. Wichlens (Michael G. Katz, Federal Public Defender, with her on the briefs), Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

Before BRORBY, BARRETT and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

In this case we revisit the question of whether a defendant is entitled by constitutional command to a jury trial when he faces only an actual maximum of six months' imprisonment stemming from charges for multiple petty offenses. We affirm the district court's decision that a defendant has no such entitlement.

## I.

■ The appellant (hereinafter Defendant) is Kevin L. Bencheck; the appellee is the United States (hereinafter Government). Mr. Bencheck was stopped by military police at Fort Sill, Oklahoma, in June 1989, for not having any face protection while riding his motorcycle, a minor Oklahoma traffic offense. The stop grew complicated because Mr. Bencheck, who is a civilian, vigorously refused to recognize the jurisdiction of the military police to detain him. The differences of opinion ultimately led to Mr. Bencheck's arrest and to various charges he violated Oklahoma law, including: 1) operating a motorcycle without a windshield, face shield or goggles;[1] 2) failing to obey a lawful order of a law enforcement officer;[2] 3) operating a motor vehicle without a valid operator's license;[3] 4) malicious injury to property;[4] and 5) assault and battery of a police officer.[5] The state charges were assimilated into federal law for trial in the district court through the Assimilative Crimes Act.[6]

Before trial the malicious injury to property charge was dismissed. At trial the district court refused to impanel a jury after promising not to sentence Mr. Bencheck to more than six months' imprisonment if he was found guilty; the court did not mention a possible fine. The Government's attorney and Mr. Bencheck's attorney agreed trial without a jury was appropriate. Mr. Bencheck, however, objected and requested a jury trial. The court nevertheless proceeded to try Mr. Bencheck itself.[7] The parties agree on the accuracy of the foregoing facts.

---

1. Okla.Stat.Ann. tit. 47, § 40–105 B (West 1988).

2. Okla.Stat.Ann. tit. 47, § 11–103 (West 1988).

3. Okla.Stat.Ann. tit. 47, § 6–101 (West 1988).

4. Okla.Stat.Ann. tit. 21, § 1760 (West 1983).

5. Okla.Stat.Ann. tit. 21, § 649 (West 1983).

6. 18 U.S.C. §§ 7, 13 (1988). "The purpose of the Assimilative Crimes Act is to provide a method of punishing a crime committed on [federal] government reservations in the way and to the extent that it would have been punishable if committed within the surrounding [state] jurisdiction." *United States v. Sain,* 795 F.2d 888, 890 (10th Cir.1986). Whether Defendant is constitutionally entitled to a jury trial is a question of federal law because there is a federal statute, 18 U.S.C. § 19 (1988), defining a petty offense as "a Class B misdemeanor, a Class C misdemeanor, or an infraction, for which the maximum fine is no greater than the amount set forth for such an offense in section 3571(b)(6) or (7) in the case of an individual...." The maximum fine set forth for an individual in 18 U.S.C. § 3571(b)(6)–(7) is $5,000. The maximum imprisonment term for a Class B misdemeanor is six months or less, and for a Class C misdemeanor thirty days or less. 18 U.S.C. § 3559(a)(7)–(8) (1988).

Under *Sain,* "state law which is inconsistent with federal policies expressed in federal statutes is not assimilated by the Act." 795 F.2d at 891. Therefore, we apply federal law if there is a conflict between state and federal law on whether Defendant could successfully demand a jury trial. *See also United States v. Garner,* 874 F.2d 1510, 1512 (11th Cir.1989) ("[T]he relevant inquiry is whether he is entitled under *federal* law to a jury trial because of the potential severity of punishment—i.e., the 'seriousness' of the offense—as prescribed by state law." (Emphasis in original)).

7. The discussion in the district court about whether the Defendant was entitled to a jury trial is found in the record:

THE COURT: Let the record reflect that this matter is being tried to the Court with the understanding and agreement by the parties that in the event of a conviction of the Defendant, no greater incarceration can be compelled than a total of six months. Is that your understanding and is that your agreement?

MS. PAPPAMICHIEL: Yes.

MR. EARLY: I have read all of the case law that your law clerk has provided me, and it appears that for a petty offense based upon the Supreme Court decision, that there is no right to a jury trial.

Also, I have also read the Fifth Circuit case that was pointed out to me and there appears to be a ruling that if a stipulation is entered that no more than six months, no matter how many charges would be imposed, that there is not a right to a jury trial.

I would just like to state that Mr. Bencheck, of course, wanted to have a jury trial and I would like to state that.

The four crimes at issue here are all misdemeanors. The maximum penalty upon conviction for each one is six months' imprisonment, a fine up to $500, or both.[8] An individual tried for all four crimes faces up to two years imprisonment if he is: 1) convicted of each crime; 2) sentenced to the maximum term of imprisonment for each crime; and 3) if all of the prison sentences run consecutively rather than concurrently. The statutory penalties, as applied to Defendant herein, exposed him to a potential imprisonment of eighteen months and ten days.

A motion for dismissal or for judgment of acquittal was granted for the charge of operating a motor vehicle without a valid license, but Defendant was convicted of the remaining three charges. Adhering to its promise not to sentence him to more than six months, the district court sentenced Defendant to concurrent terms of six months on the separate convictions of assault and battery of a police officer, and for operating his motorcycle without a windshield, face shield or goggles. The court then further sentenced Defendant to ten days for failure to obey the lawful order of a police officer. This sentence was also to run concurrently with the first two sentences, meaning Defendant would actually spend no more than ten days in jail. Defendant was placed on probation for the remainder of the six-month concurrent sentences.

The only issue on appeal is whether Mr. Bencheck was unconstitutionally denied a jury trial after the 1989 Supreme Court decision in *Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). Defendant asserts *Blanton* overruled Tenth Circuit precedent established in *Haar v. Hanrahan*, 708 F.2d 1547 (10th Cir.1983). The Government, on the other hand, contends *Haar* is still good law and argues it is consistent with *Blanton*. Both parties agree our review of this question is de novo. *Rife v. Godbehere*, 814 F.2d 563, 564 (9th Cir.1987).

## II.

The right to a jury trial derives from the Constitution. "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury...." U.S. Const. art. III, § 2, cl. 3. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI. The Supreme Court, as interpreter of the Constitution, has never read this language in absolute terms. The Court has instead construed it to except from its coverage a "category of petty crimes or offenses...." *Duncan v. Louisiana*, 391 U.S. 145, 159, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491 (1968). Recognizing the task of defining the breadth of this exception for petty crimes or offenses falls to the judiciary, *id.* at 160, 88 S.Ct. at 1453, the Court has discussed the exception as it applies to a single petty offense, contempt of court and fines. *See Blanton*, 489 U.S. at 539, 109 S.Ct. at 1290 (right to a jury trial when charged with single offense of driving under the influence of alcohol); *Muniz v. Hoffman*, 422 U.S. 454, 477, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975) (fine); *Codispoti v. Pennsylvania*, 418 U.S. 506, 512–13, 94

---

THE COURT: You are in agreement that under the law the Defendant is not entitled to a jury trial under the facts and circumstances?
MR. EARLY: Under the Supreme Court precedents.
THE DEFENDANT: If I may, I would like to object to that because of the fact that I would like to stand for my Constitutional right to have a jury trial.
THE COURT: Let the record so reflect.

**8.** Repeat offenses are required to reach the maximum penalty for failure to obey a police officer and for failure to have a windshield, face shield or goggles. Okla.Stat.Ann. tit. 47, §§ 11–103, 40–105 B (West 1988). The penalties for these crimes are found in Okla.Stat.Ann. tit. 47, § 17–101 (West 1988). The penalty for failure to have a valid operator's license, Okla.Stat.Ann. tit. 47, § 6–101 (West 1988), is found in Okla.Stat.Ann. tit. 47, § 6–308 (West 1988). The penalty for assault and battery upon a police officer is found in the statute defining the crime. Okla.Stat.Ann. tit. 21, § 649 (West 1988).

Some of the Oklahoma statutes referred to herein have been amended. The amendments were not law when Defendant was charged and therefore are not relevant to this case.

S.Ct. 2687, 2691–92, 41 L.Ed.2d 912 (1974) (criminal contempt). *See also Frank v. United States*, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969) (criminal contempt), *aff'g* 384 F.2d 276 (10th Cir.1967).

At the outset we acknowledge, following Supreme Court teachings, that drawing constitutional lines between petty and serious offenses is not easy. Also, we recognize that an individual who is threatened with imprisonment, even for a relatively short time, will not view the potential incarceration as a petty matter. The implications from even a short prison stay on an individual's psyche, personal relationships, reputation and career cannot be discounted. Thus, an individual has an important personal interest in a jury trial. This interest runs with the settled constitutional function of the jury as a body of peers that properly interposes itself between an accused and the accusing government. *See, e.g., Duncan*, 391 U.S. at 147–56, 88 S.Ct. at 1446–51; *Baldwin v. New York*, 399 U.S. 66, 73, 90 S.Ct. 1886, 1890, 26 L.Ed.2d 437 (1970) (plurality opinion). While we accept these teachings, we also note there are concerns and debate over the use of juries. Among the concerns is the time involved in administering a jury system. For example, 83,092 petty offenses, 56,763 of which were traffic offenses, were disposed of by United States Magistrates in 1987. *Administrative Office of the United States Courts, Annual Report of the Director*, Tables M–1A, M–2, at 393, 397 (1987). The federal judiciary, as it is presently constituted, cannot conduct over 83,-000 jury trials in one year for this one class of cases in addition to the jury trials that are required for serious criminal cases and civil cases. Thus, the practical necessity for limiting the number of jury trials, so long as the Constitution is respected, is obvious.

We adhere, as we must, to the precedents set by the Court, and it is not our function to even question the validity of the petty-offense exception. *United States v. McAlister*, 630 F.2d 772, 773 (10th Cir. 1980). However, because the Court has never directly addressed the exception as it applies in the case of a defendant charged with multiple petty offenses, our difficult task is to square the Court's evolving theory with our own precedents. Suffice it to say, Defendant's argument that a recent decision of the Court calls into doubt one of our past holdings carries great force. In addressing this argument, we apply the Court's pronouncements to our prior law to test whether our views retain their vitality.

### III.

The *Blanton* defendants were charged with the single offense of driving while under the influence of alcohol (DUI). The state courts denied their respective pretrial demands for a jury trial since the maximum term of incarceration for the offense was only six months and the maximum possible fine was only $1,000. 489 U.S. at 540, 109 S.Ct. at 1291. For purposes of analysis, the Court assumed the defendants would receive the maximum authorized prison sentence, *id.* at 544, 109 S.Ct. at 1293, and then focused on the maximum penalty authorized by the legislature as the "most relevant ... criteria" for determining whether an offense is petty. *Id.* at 541, 109 S.Ct. at 1291 (quoting *Baldwin*, 399 U.S. at 68, 90 S.Ct. at 1888). In voicing its evolving preference for using legislative enactments as an objective standard by which to measure whether an offense is petty or serious, the Court said:

> In fixing the maximum penalty for a crime, a legislature "include[s] within the definition of the crime itself a judgment about the seriousness of the offense." The judiciary should not substitute its judgment as to the seriousness for that of a legislature, which is "far better equipped to perform the task, and [is] likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions in this respect."

*Id.* at 541–42, 109 S.Ct. at 1291–92 (citations omitted). *See also Frank*, 395 U.S. at 148, 89 S.Ct. at 1505 ("In determining whether a particular offense can be classified as 'petty,' this Court has sought objective indications of the seriousness with which society regards the offense. The

most relevant indication of the seriousness of an offense is the severity of the penalty authorized for its commission.") (citing *District of Columbia v. Clawans*, 300 U.S. 617, 628, 57 S.Ct. 660, 663, 81 L.Ed. 843 (1937)); *Duncan*, 391 U.S. at 161, 88 S.Ct. at 1453 ("In determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial, we ... refer to objective criteria....") (citing *Clawans*, 300 U.S. at 617, 57 S.Ct. at 660).

Before *Blanton*, the Court decided a prison sentence exceeding six months is "sufficiently severe by itself" to take an offense out of the petty category, thereby triggering for "an accused the important right to trial by jury...." *Baldwin*, 399 U.S. at 69 n. 6., 74, 90 S.Ct. at 1888 n. 6, 1891.[9] In *Blanton*, the Court traveled a bit closer to the converse conclusion that a crime carrying a maximum prison term of six months or less is automatically petty. 489 U.S. at 543, 109 S.Ct. at 1293. However, the Court expressly stopped short of an absolutist result, holding instead there is only a Sixth Amendment presumption that society views an offense with a prison term of six months or less as a petty one. *Id.* Describing the presumption for a unanimous Court, Justice Marshall wrote:

> A defendant is entitled to [a] jury trial in such circumstances only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a "serious" one.

*Id.* The Court predicted it would be a "rare situation" where an offense is serious because of "onerous penalties that nonetheless 'do not puncture the 6–month incarceration line.'" *Id.* (citation omitted).

There has been only one federal court decision since *Blanton* where the presumption was punctured. The defendant in *Richter v. Fairbanks*, 903 F.2d 1202 (8th Cir.1990), faced jail, a $700 fine and a fifteen-year revocation of his driver's license for driving while intoxicated (DWI) and for refusing to take a breathalyzer test. *Id.* at 1203. If sentenced consecutively, the defendant could have been jailed for six months and seven days. However, the court did not reach the issue of consecutive jail time because it concluded a sentence consisting of six months' imprisonment and a fifteen-year license revocation is sufficiently serious by itself to warrant a jury trial. *Id.* at 1204.

More typical are decisions like *United States v. Garner*, 874 F.2d 1510 (11th Cir. 1989), where the court said the *Blanton* presumption is not overcome even though the defendant charged with DUI faces collateral consequences upon conviction, including "a potential increase in liability insurance premiums, public opprobrium, and the potential for an enhanced sentence upon a second or subsequent conviction...." *Garner*, 874 F.2d at 1511. In *United States v. Musser*, 873 F.2d 1513 (D.C.Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 518, 107 L.Ed.2d 519 (1989), no jury trial was required where the defendant's arrest on a petty charge allegedly ran afoul of the First Amendment. The defendant was arrested for violating a minor sign regulation while demonstrating in Lafayette Park in Washington, D.C. *Id.* at 1514. The court said taking issue with a minor violation arrest is not a valid reason for a jury trial because "[t]he right to jury trial under *Blanton* focuses on the charge and the sentence it carries, not matters in defense." *Id.* at 1516. In another case, a lawyer-defendant charged with criminal

---

**9.** The conclusion that "no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized" commanded a majority in *Baldwin*. *Id.*, 399 U.S. at 69, 90 S.Ct. at 1888. Justice White's opinion was joined by Justices Brennan and Marshall. Justices Black and Douglas concurred in the judgment, but would have gone further and required jury trials in all criminal prosecutions. *Id.* at 74–76, 90 S.Ct. at 1891–1892. Thus, at least five members of the Court believed a jury trial is required when the potential punishment is greater than six months. In addition, Justices Harlan and Stewart apparently reached the same conclusion as to jury trials in federal court. *See* 399 U.S. at 120–21, 90 S.Ct. at 1916–17 (Harlan, J., dissenting); *id.* at 143, 90 S.Ct. at 1928 (Stewart, J., dissenting).

contempt was not entitled to a jury trial when he was fined $600 and ordered to accept five criminal pro bono cases. *United States v. Kozel*, 908 F.2d 205 (7th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 969, 112 L.Ed.2d 1055 (1991). Neither the work Kozel was ordered to perform, nor the fact he was subject to attorney discipline for the contempt, triggered any constitutional concern about his jury trial right. *Id.* at 207–08.

Defendant in this appeal points to a state law decision in support of his jury trial demand. New Mexico, in *State v. Sanchez*, 109 N.M. 428, 786 P.2d 42 (1990), relying on its interpretation of the United States Constitution, opted for the "objective measure" in "determining the constitutional right to jury trial of a defendant charged with more than one petty crime arising from a single incident." *Sanchez*, 786 P.2d at 43. The court, in light of *Blanton*, said whether a defendant is entitled to a jury trial is to be determined by referencing legislatively set statutory penalties and not the actual potential sentence. 786 P.2d at 46. Of course, Defendant here recognizes we are not bound by the New Mexico Supreme Court decision and we respectfully decline to follow it to the extent it interprets federal law. Our holding in *Sain* properly allows us to focus on our independent application of federal law when determining whether there will be a jury trial in federal court. *Sain*, 795 F.2d at 890. In addition, we note the *Blanton* Court refused an invitation to survey and rely on state law regarding "the potential term of imprisonment or amount of fine that trigger[s] a jury trial regardless of the particular offense involved." 489 U.S. at 545 n. 11, 109 S.Ct. at 1294 n. 11.

To the extent we examined state law, including New Mexico's decision in *Sanchez*, we find there is no national consensus on what makes one offense petty and an-

other serious. The differences among the states are profound. For example, Arizona reads its constitution as labeling DUI a serious offense; thus, there is a jury trial right in Arizona even though the DUI defendant may only be fined up to $300 and imprisoned for no more than six months. *Rothweiler v. Superior Court of Pima Co.*, 100 Ariz. 37, 410 P.2d 479, 481, 484–85 (1966). However, the right does not extend to other traffic offenses, such as running a red light, because they are labeled petty. *State v. Harrison*, 164 Ariz. 316, 792 P.2d 779 (Ct.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 979, 112 L.Ed.2d 1064 (1991). New Jersey, on the other hand, refuses to call DWI a crime and recognize a jury trial right even for the third-time offender who may be jailed for 180 days, fined $1,000 and lose his driver's license for ten years. *State v. Hamm*, 121 N.J. 109, 112, 577 A.2d 1259, 1261 (1990). *See generally* Annotation, *Right to Trial by Jury in Criminal Prosecution for Driving While Intoxicated or Other Similar Offenses*, 16 A.L.R.3d 1373 (1967). Traffic offenses are, of course, merely one aspect of the larger petty versus serious offense issue as it implicates the jury trial right. Because there is no national consensus among the states, we believe a single state court decision is not sufficiently persuasive in identifying offenses as either petty or serious.

Moreover, our decision in *Haar*, read today in light of *Blanton*, achieves the uniformity Defendant obviously desires when he argues only a pure "objective" standard is appropriate for determining when someone gets a jury trial. But before addressing this point, we first briefly review what was said in *Haar*.[10]

Haar, who was charged with aggravated battery and criminal damage to property in New Mexico, was tried and convicted by a jury in state magistrate court. 708 F.2d at

---

**10.** Two decisions from this court predate *Haar*. In *United States v. Potvin*, 481 F.2d 380, 383 (10th Cir.1973), a jury trial was required where the defendants were charged with two or more petty offenses and the potential aggregate penalty on all counts was in excess of six months' imprisonment. Somewhat to the contrary is the comment in *United States v. Smyer*, 596 F.2d

939, 942 (10th Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 84, 62 L.Ed.2d 55 (1979), that no jury trial is required where the actual sentence for multiple petty offenses is less than six months. Since *Haar* adequately discusses the points expressed in these earlier cases, particularly after *Blanton*, further reference to *Potvin* or *Smyer* is unnecessary.

1547–48. He asserted his right under state law to a second trial de novo in state district court, again demanding a jury on retrial. That court, however, denied the jury request and convicted him again. Haar ultimately received two concurrent terms of ninety days on the two convictions. The matter reached us on his habeas corpus petition following an unsuccessful attempt to reverse the state district court on direct appeal. *Id.* at 1548. Haar's habeas argument, which we rejected, reasserted his view "that since he faced conviction in the district court for two crimes arising out of the same transaction, and since the aggregate of the potential sentences exceeded six months, he was entitled to a jury trial." *Id.*

Our discussion of Supreme Court precedents to that point in time, including the decisions in *Duncan* and *Baldwin*, acknowledged the Court's growing use of "objective criteria in resolving the reach of the constitutional right to a jury trial." *Id.* at 1550. But we also "recognized that the actual penalty that will be imposed is of primary importance to the defendant." *Id.* We labeled this recognition a " 'subjective' factor to the constitutional calculus of the right to a jury trial." *Id.*

We found merit to both approaches. The objective method, which determines "the right to a jury trial on the basis of the aggregate of the statutorily prescribed penalties imparts a pragmatic temper to the Supreme Court's concept of a 'serious offense.' " *Id.* at 1552. Alternatively, what we called the subjective approach focuses on "the potential penalty actually faced by the defendant." *Id.* We did not see this approach as broadening the definition of a serious offense; rather, it is a corollary to the objective method. It establishes the "right to a jury trial where a defendant faces the consequences, as well as an actual charge, of a serious offense." *Id.* After weighing both approaches, we held: "a defendant is entitled to a jury trial for multiple petty offenses arising out of the same act, transaction, or occurrence only if he is actually threatened at the commencement of trial with an aggregate potential penalty of greater than six months' imprisonment." *Id.* at 1553.

▪ Although *Haar* speaks of subjectivity, its holding clearly shows the linchpin of our standard to be the readily identifiable, measurable and uniform objective six months' imprisonment. Our approach, following *Duncan*, *Baldwin*, and now *Blanton*, is penalty-oriented and requires a jury trial for the whole group of cases where the defendant is actually threatened with potential incarceration of more than six months. For example, the state may not circumvent the right to a jury trial by charging someone with a serious crime like murder, and then stipulate before trial that, if convicted, the accused will receive no more than six months. Such a tactic, if tried by the state, would run up against the policy that no single offense "can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized" by the legislature. *Baldwin*, 399 U.S. at 69, 90 S.Ct. at 1888. Nor may the right to a jury trial be denied when the state files charges for petty offenses that individually do not carry a possibility of more than six months' incarceration, but carry "an [actual] aggregate potential penalty of greater than six months' imprisonment." *Haar*, 708 F.2d at 1553. Finally, the presumption announced in *Blanton* allows an accused to successfully claim the right to a jury trial in that "rare situation" where the offense or offenses are serious because of "onerous penalties that nonetheless 'do not puncture the 6–month incarceration line.' " *Blanton*, 489 U.S. at 543, 109 S.Ct. at 1293 (citation omitted). *See Fairbanks*, 903 F.2d at 1204. *See generally* Annotation, *Right to Jury Trial Under Federal Constitution Where Two or More Petty Offenses, Each Having Penalty of Less Than 6 Months' Imprisonment, Have Potential Aggregate Penalty in Excess of 6 Months When Tried Together*, 26 A.L.R.Fed. 736 (1976).

Moreover, the penalty-oriented approach is consistent with Supreme Court cases concerning jury trials in criminal contempt proceedings. In this arena the length of

the sentence determines whether there is a jury trial. *Codispoti v. Pennsylvania,* 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974) ("[T]hose crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes."); *Taylor v. Hayes,* 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974) ("[C]ontempt of court is a petty offense when the penalty actually imposed does not exceed six months or a longer penalty has not been expressly authorized by statute."). In *Taylor,* the Court approved of trying a criminal contempt case without a jury where, absent legislative penalties making the contempt a serious offense, the state "determines not to impose a sentence longer than six months." 418 U.S. at 496, 94 S.Ct. at 2702. This is exactly the approach followed here regarding Defendant and the presumptively petty crimes with which he was charged.

In addition, the recently amended Federal Rules of Criminal Procedure (the "Rules") are further support for the penalty-oriented approach. The Rules do not apply to petty offense cases "as to which the court determines, that, in the event of conviction, no sentence of imprisonment will actually be imposed." Fed.R.Crim.P. 58(a)(3). Thus, the trial judge is free to announce before trial how the sentence will be limited in the event of conviction, and then may determine based on that announcement whether to use the Rules. The same logic applies here, where the trial judge announced that the sentence, in the event of conviction, would be no more than six months' incarceration and because of that limitation no jury was constitutionally required.[11] Congress also sets the dividing line between a petty and serious offense at six months' imprisonment. 18 U.S.C. § 19 (1988).

Finally, as already mentioned, the Supreme Court believes there may be a rare case where the crime is serious even though its penalties do not include more than six months' incarceration. *Blanton,*

489 U.S. at 543, 109 S.Ct. at 1293. Such a crime will most easily be spotted by referencing the legislature's statute to ascertain what additional penalties besides incarceration qualify the offense as serious. *Id.* However, the Court further acknowledges that this standard is "somewhat imprecise," and with that in mind we think it is broad enough to encompass the equally scarce case where the state attempts to conduct a "vindictive prosecution" of one or more petty offenses by denying a defendant a jury trial. *Haar,* 708 F.2d at 1552.

*Haar* recognizes if "the defendant faces multiple charges at trial but does not actually face a serious penalty, the risk of prosecutorial abuse is small." *Id.* at 1552–53. We agree, but also recognize the risk is not zero. Accordingly, there is a need for interposing the common sense judgment of a jury between the government and the defendant where the defendant demonstrates to the trial judge that there is a reasonable probability the state is undertaking the prosecution of the petty charge, or charges, out of spite or vindictiveness. Because these cases are rare, we believe it will be obvious to the trial judge when the state is acting from a motive driven by the constitutionally impermissible desire to oppress the defendant. *Duncan,* 391 U.S. at 155, 88 S.Ct. at 1451 ("A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government.") (footnote omitted).

█ In this case, there is no evidence in the record hinting the Government was "corrupt or overzealous" in charging the Defendant. *Duncan,* 391 U.S. at 156, 88 S.Ct. at 1451. Nor is there any indication the judge was "compliant, biased, or eccentric." *Id.* In fact, one charge was dismissed before trial without any objection from the Government, and Defendant was found innocent by the court of another charge. What is clear from the record is Defendant's mistaken belief the military police at Fort Sill have no authority to stop

**11.** The Federal Rules of Criminal Procedure were amended on December 1, 1990, and now include the substance of the former Rules of Procedure for the Trial of Misdemeanors before United States Magistrates. *See* 58 U.S.L.W. 3722 (U.S. May 15, 1990).

a civilian for a state traffic offense occurring on federal property unless "martial law has been declared." The trial court rejected that explanation when it found Defendant guilty of three of the four charges that went to trial. The court recognized it was Mr. Bencheck's steadfast adherence to his position about the jurisdiction of the military police that led to his "terribly escalated and misguided resistance to a lawful arrest." We do not disagree with these observations.

## IV.

In conclusion, Defendant was not at risk of serving more than six months when he was tried on the four petty charges stemming from a single occurrence. *Haar,* 708 F.2d at 1553. Nor did Defendant show that any additional penalties he faced, including statutory penalties, were so serious a jury trial was required even though he faced limited jail-time. *Blanton,* 489 U.S. at 543–44, 109 S.Ct. at 1292–93. Therefore, the decision of the district court denying Defendant a jury trial on the multiple petty charges is not repugnant to the United States Constitution.

AFFIRMED.

EBEL, Circuit Judge, dissenting:

Based upon the Supreme Court's recent ruling in *Blanton v. City of North Las Vegas,* 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) and the Tenth Circuit's long-standing decision of *United States v. Potvin,* 481 F.2d 380 (10th Cir.1973), I conclude that defendant here was denied his right to a jury trial.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." U.S. Const. amend. VI. Although the Supreme Court has long recognized "that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision," *Duncan v. Louisiana,* 391 U.S. 145, 159, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491 (1968), courts generally have held that crimes carrying a penalty in excess of six months imprisonment are not petty and

therefore entitle the defendant to a jury trial. *See Baldwin v. New York,* 399 U.S. 66, 68, 90 S.Ct. 1886, 1887, 26 L.Ed.2d 437 (1970); *United States v. Smyer,* 596 F.2d 939, 942 (10th Cir.), *cert. denied,* 444 U.S. 843, 62 L.Ed.2d 55 (1979).

In this case, defendant was charged with four misdemeanor offenses, each carrying a maximum penalty upon conviction of six months imprisonment. Taken in the aggregate, the statutory penalties exposed the defendant to a potential imprisonment of two years. However, as the majority points out, the trial judge promised before trial not to sentence defendant to more than six months incarceration. Therefore, in order to resolve defendant's Sixth Amendment claim, we must first determine: 1) whether it is appropriate to aggregate the penalties faced by defendants charged with multiple petty offenses; and 2) whether the right to a jury trial should be determined on the basis of the potential penalties provided in the statutory definitions of the crimes (an objective standard), or on the basis of the potential penalties as they may be limited by the judge before commencement of trial (subjective standard).

## AGGREGATION

Although the Supreme Court has yet to address the right to a jury trial when a defendant is charged with multiple petty offenses, the Tenth Circuit has held that "a person charged with two or more petty offenses arising out of the same act, transaction, or occurrence, is entitled to a trial by jury when the potential aggregate penalty on all counts is in excess of six months imprisonment." *Potvin,* 481 F.2d at 381. The *Potvin* court reasoned that "defendants can view as no less serious a possible penalty of a year in prison when charged with two offenses arising out of the same act ... than if charged with one offense having a potential penalty of one year's imprisonment." *Id.* at 382. However, while there can be no doubt that *Potvin* expressly directed courts to aggregate the penalties of petty offenses for Sixth Amendment purposes, "the *Potvin* opinion

[did] not reveal whether the right to a jury trial should be determined on the basis of the potential penalties provided in the statutory definition of the crimes, or on the basis of the actual penalties faced by the defendant." *Haar v. Hanrahan*, 708 F.2d 1547, 1552 (10th Cir.1983). This issue was not addressed until ten years later with the case of *Haar v. Hanrahan*.

## SUBJECTIVE vs. OBJECTIVE TEST

In *Haar*, the court faced a situation similar to the one we face today. Defendant, who was charged with several "petty" offenses, demanded a jury trial on the reasoning that the aggregate statutory penalty for his offenses exceeded six months imprisonment. The state court rejected defendant's request, concluding that defendant was not entitled to a jury trial since he had been assured before trial that his sentence would not exceed six months. The Tenth Circuit carefully weighed the "choice between the 'objective' penalty provided by statute and the 'subjective' penalty actually faced by the defendant," and observed that "[b]oth choices have merit in terms of the values that *Potvin* seeks to protect." *Id.* However, the court ultimately opted for the subjective test, holding that "a defendant is entitled to a jury trial for multiple petty offenses ... only if he is *actually threatened* at the commencement of trial with an aggregate potential penalty of greater than six months' imprisonment." *Id.* at 1553 (emphasis added).

"[G]iven the absence of Supreme Court guidance on this issue," *id.*, the *Haar* rule was a perfectly acceptable and workable extension of *Potvin*'s Sixth Amendment jurisprudence. However, in 1989 the Supreme Court issued its opinion in *Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). Although not a case involving multiple petty offenses, *Blanton* stated in no uncertain terms that courts are to apply an objective standard when considering the Sixth Amendment claims of criminal defendants. Specifically, the Court stated:

> In determining whether a particular offense should be categorized as "petty," our early decisions focused on the nature of the offense and on whether it was triable by a jury at common law. In recent years, however, we have sought more *objective indications* of the seriousness with which society regards the offense. We have found the most relevant such criteria in the severity of the *maximum authorized penalty*. In fixing the maximum penalty for a crime, a legislature includes within the definition of the crime itself a judgment about the seriousness of the offense. The judiciary should not substitute its judgment as to seriousness for that of the legislature, which is far better equipped to perform the task, and is likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions in this respect.

*Id.* at 541–542, 109 S.Ct. at 1291–1292 (citations and quotations omitted) (emphasis added).

To my mind, the subjective test announced in *Haar* cannot be squared with this language in *Blanton*. By hinging a defendant's Sixth Amendment rights on the pre-trial sentence pronouncements of the trial judge, *Haar* clearly invites "the judiciary ... [to] substitute its judgment as to seriousness for that of the legislature." *Blanton*, 489 U.S. at 541, 109 S.Ct. at 1292. Such a standard directly contravenes the Supreme Court's admonition to look to "objective indications of the seriousness with which society regards the offense." *Id.* I therefore conclude that *Blanton* overrules *Haar* and directs us to look to the " 'objective' penalty provided by statute." [1] *Haar*,

---

1. Although the majority finds support for its "subjective" test in the Supreme Court's criminal contempt cases, *Haar* itself acknowledged that these cases are "of limited precedential value." *Haar*, 708 F.2d at 1550 n. 14. As the Supreme Court noted in *Duncan v. Louisiana*, 391 U.S. 145, 162 n. 35, 88 S.Ct. 1444, 1454 n. 35, "criminal contempt is unique in that legislative bodies frequently authorize punishment without stating the extent of the penalty which can be imposed." That is, the statutes are open-ended and do not define minimum or maximum penalties. Thus, "... where no legislative penalty is specified and sentence is left to the discretion of the

708 F.2d at 1552. Coupled with the aggregation policy set forth in *Potvin*, *Blanton* requires us to make a "determination of the right to a jury trial on the basis of the aggregate of the statutorily prescribed penalties...." *Id.* Applying this standard to the case at hand, I must conclude that appellant was denied his right to a jury trial.

## CONCLUSION

*Blanton* and *Potvin* require a jury trial for defendants who, based on the aggregate of the statutorily prescribed penalties, face more than six months incarceration. Since appellant here faced such a penalty, he was entitled to a trial by jury. Although I am mindful of the majority's concerns regarding "the practical necessity for limiting the number of jury trials," *supra*, I am also mindful of our obligation to follow the clear directives of the Supreme Court and the Tenth Circuit. Should the prospect of additional jury trials become truly overwhelming, it may be necessary for this court to reconsider en banc the policy of aggregating petty offenses as set forth in *Potvin*. Prosecutors and legislatures might also address this potential problem by tailoring their criminal charges and by statutorily precluding aggregation. For the time-being, however, we are bound to adhere to both *Potvin* and *Blanton* and therefore should reverse the lower court's ruling.

judge, as is often true in the case of criminal contempt, the pettiness or seriousness of the contempt will be judged by the penalty actually imposed." *Codispoti v. Pennsylvania*, 418 U.S. 506, 511, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974).