UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert A. STENZEL, Defendant–
Appellant.

No. 94–2105.

United States Court of Appeals,
Tenth Circuit.

March 3, 1995.

Judith A. Rosenstein, Asst. Federal Public Defender, Albuquerque, NM, for defendant-appellant.

Tara C. Neda, Asst. U.S. Atty. (John J. Kelly, U.S. Atty., and James T. Martin, Asst. U.S. Atty., on the brief) Albuquerque, NM, for plaintiff-appellee.

Before BRORBY, LOGAN and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Robert A. Stenzel appeals his convictions under the Assimilative Crimes Act for concealing his identity, disorderly conduct, failure to exhibit evidence of financial responsibility, and failure to exhibit evidence of vehicle registration.[1] On appeal, he asserts that the court (1) violated his Sixth Amendment right to a jury trial, (2) erred in not recusing itself, and (3) violated his Sixth Amendment right to effective assistance of counsel because his attorney was not allowed to make a closing argument. He also argues (4) that the evidence was insufficient to convict him on the disorderly conduct and concealing identity charges.

The facts, viewed in the light most favorable to the government as we must, are as follows. Defendant and his nephew drove to the Wyoming entrance of Kirtland Air Force Base to visit the Atomic Museum. Airmen Christopher Woodard and Martin Herrera were on duty at that entrance with responsibility to control entry. Defendant's vehicle did not have a base decal, nor did defendant have base affiliation; therefore, Woodard informed defendant that to obtain a base pass, he needed to produce proof of insurance, the vehicle registration and his driver's license. When defendant stated he did not have those documents, Woodard refused him entrance to the base and, apparently acting in accord with a base regulation, made further requests to see identification. Defendant responded with profanities, and drove onto the base without authorization. Woodard then called for assistance. Meanwhile, after driving a short distance defendant returned to the entrance, where Woodard again asked to see his driver's license and other identification. Defendant refused and continued using profane language.

Herrera observed some of this activity and offered to assist. He also requested defendant's identification; defendant refused, responding with profane language. When Sergeant Ernesto Rojas arrived in response to Woodard's call for assistance he parked his vehicle in a manner to block defendant's exit; he also addressed defendant, twice asking him to identify himself. When defendant refused, the three airmen pulled defendant from his vehicle after telling him that he was being placed under arrest for failure to identify himself. Defendant was struggling during the removal, and Rojas "thought he was going to hit me with his elbow." II R. 54; *see also id.* at 58, 73, 97.

Defendant continued to resist the officers. Woodard testified that defendant "got belligerent and started fighting." *Id.* at 24. Woodard and Herrera stated that when defendant attempted to strike Rojas with his elbow, Rojas pulled him to the ground and handcuffed him with their help. Defendant's

---

1. Defendant was charged under 18 U.S.C. §§ 7 (Special Maritime and Territorial Jurisdiction) and 13 (Assimilative Crimes Act) which provide for federal jurisdiction for state crimes committed on certain federal property. Defendant was charged with violating N.M.Stat.Ann. §§ 30–22–3, 30–20–1, 66–5–229(C) and 66–3–13, respectively.

verbal assault continued as he kicked and screamed while lying handcuffed on the ground. The record reflects conflicting testimony as to the measures taken by the officers to subdue defendant. Rojas obtained the additional assistance of Airman Jack Pranaitis to transport defendant to the law enforcement desk and placed him temporarily in a holding cell. Defendant received five citations, during which he continued his argumentative and profane language; he was then returned to the base entrance and released.

Before trial the government dismissed a citation for resisting, evading or obstructing an officer, in violation of N.M.Stat.Ann. § 30–22–1, the only charge that carried a statutory penalty in excess of six months imprisonment. The district court denied defendant's request for a jury trial, ruling that if convicted on the remaining four charges that defendant's prison sentence would not exceed six months. Defendant was convicted on those counts and sentenced to six months probation and a total of thirty dollars in fines.

### I

■ We first consider whether defendant had a constitutional right to a jury trial when he was charged with multiple petty offenses but was assured that the aggregate penalty would not exceed six months imprisonment. This is an issue we review de novo. *United States v. Bencheck*, 926 F.2d 1512, 1514 (10th Cir.1991).

Article III of the Constitution provides for a jury trial in all cases (except charges of impeachment). The Supreme Court has held, however, that this provision does not apply to "petty crimes or offenses." *Duncan v. Louisiana*, 391 U.S. 145, 159, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491 (1968). In *Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989), the Court concluded that a driving under the influence of alcohol offense carrying a maximum six-month prison term and a fine of no more than $1,000 was petty, not requiring a jury trial.

After *Blanton*, a panel of this court considered a case closely analogous to the one before us now. In it a defendant was charged with several misdemeanor crimes committed on a military base, none of which permitted incarceration for more than six months, but if consecutive sentences were imposed carried a potential for two years imprisonment and up to $2,000 in fines. The district court, as here, refused a demand for a jury trial, promising that in no event would it sentence the defendant to more than six months imprisonment. After conviction on all counts the court imposed concurrent sentences that required no more than ten days imprisonment and probation for the remainder of a six-month period. We upheld the denial of a jury trial against a constitutional challenge. *See Bencheck*, 926 F.2d at 1512. We cannot meaningfully distinguish that case, and so affirm the district court's denial of a jury trial in the instant case. Although one judge on this panel dissented in *Bencheck*, we deny defendant's proposal that we request review by the in banc court.

### II

■ Defendant argues that the district judge erred in not recusing himself from defendant's trial; this issue we review for abuse of discretion. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir.1992).

The applicable statute governing recusal provides that:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

28 U.S.C. § 455(a), (b)(1). This statute is intended "to promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855 (1988).

The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists.

*Id.* (quoting *Health Servs. Acquisition Corp., v. Liljeberg,* 796 F.2d 796, 802 (5th Cir.1986)). "The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir. 1987). This objective standard requires· a factual basis for questioning the judge's impartiality. *United States v. Cooley,* 1 F.3d 985, 993 (10th Cir.1993).

■ We have held that under either 28 U.S.C. § 144 or § 455, the party seeking recusal must act in a timely fashion to request recusal. *Willner v. University of Kansas,* 848 F.2d 1023, 1028 (10th Cir.1988), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989); *Singer v. Wadman,* 745 F.2d 606, 608 (10th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985). Defense counsel never requested recusal. The only exchange that even mentioned possible bias was as follows:

Q. And that's the Wyoming gate at Kirtland where this incident allegedly occurred, is that correct?

A. Yes, ma'am.

THE COURT: For the record, I'm well acquainted with the base. I was stationed there years ago and I have also recently been the Honorary Commander of the Air National Guard, so I know what it is.

MS. ROSENSTEIN: I was unaware of that, Your Honor. Does the Court feel that that would be an apparent conflict?

THE COURT: No, I said I'm acquainted with the base.

MS. ROSENSTEIN: Okay.

II R. 18. This dialogue does not constitute a request for recusal, nor did counsel otherwise develop on the record any basis for disqualification of the judge. Because the defendant made no timely objection the recusal issue was not preserved for appeal.

III

■ Defendant argues that his Sixth Amendment right to counsel was violated when his attorney was denied the opportunity to present closing argument. Because defendant made no contemporaneous objection preserving this issue for appeal, we review for plain error. *United States v. Martinez,* 974 F.2d 589, 590 (5th Cir.1992).

At the close of evidence, the district court started to announce its findings of fact and conclusions of law. Defense counsel immediately interjected her desire to renew certain motions, and also asked the district court to review an exhibit which she then handed to the judge. A brief dialogue followed between defense counsel and the district court about documented proof of defendant's insurance. After that exchange the district court announced its findings and conclusions. The record reflects no announcement denying closing argument nor any specific request by defense counsel to argue. Defense counsel admitted choosing "not to interrupt the [c]ourt again." I R. doc. 14; Appellant's Brief in Chief at 21.

■ A defendant's right to effective assistance of counsel includes the right to present closing argument. *Herring v. New York,* 422 U.S. 853, 865, 95 S.Ct. 2550, 2556–57, 45 L.Ed.2d 593 (1975). This guarantee, like other constitutional rights, may be waived. A waiver must be knowing and intentional, *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), *overruled on other grounds, Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), but a defendant may not fail to object to perceived error and thereby invite a court to commit error. The narrow issue before us is then whether defense counsel effectively waived the right to present oral argument. We conclude that she did.

Defense counsel's willingness and ability to interrupt and renew motions as the court began rendering judgment indicates that her silence concerning closing argument might reasonably be viewed as a strategic choice made at the close of the trial. Considering the brevity of the case and the clarity of the legal and factual issues, this was a reasonable

tactic. *United States v. Davis,* 993 F.2d 62, 64 (5th Cir.1993). Further, counsel acknowledged specifically deciding not to interrupt the court to request argument. We have found no cases imposing an affirmative duty on a court to offer counsel the opportunity to argue their case. Although we would prefer that the court discuss the proceedings with counsel and inquire whether argument is desired, we hold, like the Fifth Circuit in *Martinez,* 974 F.2d at 591–92, on the record before us that there was no error, and that defense counsel knowingly decided to forgo closing argument.[2]

## IV

Finally, defendant asserts that the evidence was insufficient to sustain his convictions for disorderly conduct and concealing identity. We review the evidence in the light most favorable to the prosecution and affirm if any reasonable trier of fact could have found defendant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The statute applicable to the disorderly conduct charge provides: "Disorderly conduct consists of: engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace." N.M.Stat.Ann. § 30–20–1(A). New Mexico courts have held this provision constitutional because it criminalizes only speech that "tend[s] to incite an immediate breach of the peace." *State v. James M.,* 111 N.M. 473, 806 P.2d 1063, 1066 (App.1990) (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942)), *cert. denied,* 111 N.M. 529, 807 P.2d 227 (1991). ·In applying this statute law enforcement officers are required to have a "higher tolerance for offensive conduct and language." *James M.,* 806 P.2d at 1067 (citing *State v. Wade,* 100 N.M. 152, 667 P.2d 459, 461–62 (App.1983)).

The record contains sufficient evidence to convict defendant of this charge. The prose-

cution witnesses all testified that they perceived defendant's actions as a physical threat to Rojas. The few inconsistencies in the recollections of Herrera, Rojas and Woodard do not detract from their basic account that defendant was either struggling with Rojas or attempting to hit him with his elbow. Defendant's nephew's version of the incident acknowledges that defendant turned toward Rojas just before he was wrestled to the ground by the officer. The district court found credible the airmen's testimony. It found most compelling the corroborating testimony of Sergeant Hummel, who was not personally involved but heard and observed most of the encounter.

Defendant also challenges the sufficiency of the evidence to convict him of concealing identity. The statute provides:

> Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.

N.M.Stat.Ann. § 30–22–3. Defendant argues that he was upset and confused by the requests for identification. The overwhelming evidence, however, was that he responded with profanity and recalcitrance to multiple requests that he produce some identification. A person genuinely puzzled by those requests surely would have queried the officers rather than responding belligerently. The record contains sufficient evidence for the district court to reasonably conclude defendant violated both statutes.

AFFIRMED.

---

**2.** Although it does not alter our analysis, the district court also refused defense counsel's belated request to supplement the record with a written summation. We believe a grant of the request to supplement might have eliminated this issue on appeal.